**EXHIBIT 4**

*Ben*

*Land Disposition Agreement*

2947 PAGE 747

THIS AGREEMENT, made and entered into this           day of AUG 2  1972

by and between CHAPEL HOUSING PARTNERSHIP, a limited partnership, (hereinafter

referred to as "Developer"), and the MAYOR AND CITY COUNCIL OF BALTIMORE, a

municipal corporation of the State of Maryland (hereinafter referred to as

"City"), acting by and through the DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

(hereinafter referred to as "Department"), and with the prior approval of the

Board of Estimates of said municipality.

WHEREAS, acting under the authority contained in Article XIB of the

Constitution of Maryland and Paragraph 14A of Section 6 of the Baltimore City

Charter (1949 Edition), as amended by Chapter 511 of the Laws of Maryland of

1953, the City enacted Ordinance No. 692, approved December 31, 1956, which

established the Baltimore Urban Renewal and Housing Agency and provided for

certain procedures under which urban renewal projects are to be undertaken in

the City of Baltimore; and

WHEREAS, in accordance with the procedures set out in said Ordinance

No. 692, the Mayor and City Council of Baltimore by Ordinance No. 520, adopted

June 27, 1969, approved a Renewal Plan for the Washington Hill Neighborhood

Development Program, which project is now known as Chapel NDP (MD A-1), (herein-

after referred to as the "Project Area"), which designates lots available for

disposition to developers and the standards and controls which govern the use of

such lots;

WHEREAS, by Ordinance No. 152, approved June 28, 1968, the Mayor and City

Council of Baltimore created the Department of Housing and Community Development,

thereby abolishing the Baltimore Urban Renewal and Housing Agency; and

WHEREAS, by said Ordinance No. 152, the Mayor and City Council of Baltimore

provided that nothing therein shall be taken or construed to repeal, amend, alter,

modify, or effect in any manner any act or thing or any contract, deed, lease,

agreement, or other legal instrument, or any ordinance enacted pursuant to said

Ordinance No. 692; and

WHEREAS, the City has or will acquire title to that portion of the Project

Area designated as Lots Nos. 4 and 5 (hereinafter referred to as the "Property"),

in the aforesaid Renewal Plan, designated for the uses set forth in Schedule B

annexed hereto and made a part hereof; and

# 2947 PAGE 748

WHEREAS, the Department has fixed the boundaries of the Property as hereinafter set forth in the metes and bounds description in Schedule A annexed hereto and made a part hereof; and

WHEREAS, in order to enable the Department to achieve the objectives of the Renewal Plan, and particularly to make the land in the Project Area available (after acquisition and clearance by the Department) for development by private enterprise for and in accordance with the uses specified in the Renewal Plan, the Federal Government has undertaken to provide, and has provided substantial aid and assistance to the City through the Department by a Contract for Capital Grant dated April 17, 1970; and

WHEREAS, the Department and the Developer have carried on negotiations for the purchase of the Property and the Developer is desirous of developing the same in accordance with the Renewal Plan for the Project Area and subject to and upon the terms and conditions contained herein; and

WHEREAS, the Department believes that the development of the Property, pursuant to this Agreement, and the fulfillment generally of this Agreement and the intentions set forth herein, are in the vital and best interest of the City and the health, safety, morals and welfare of its residents, and in accord with the public purposes and the provisions of the applicable Federal, State and local laws and the requirements under which the Renewal Plan hereinabove referred to has been undertaken and is being assisted; and

WHEREAS, the Department, on the basis of the foregoing and the undertakings of the Developer pursuant to this Agreement, is willing to sell the Property to the Developer, and to do so at a price permitting the development of the Property in accordance with the provisions of the Renewal Plan and this Agreement, and the Developer is willing to purchase the Property at the price hereinafter set forth and to develop the same according to the provisions of the Renewal Plan and this Agreement, said Property being more particularly described in Schedule A annexed hereto and made a part hereof.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH, that in consideration of the payment of the sum of One Dollar ($1.00) paid by each of the parties hereto to the

-2-

JLB0062



2947 PAGE 749

other, and other good and valuable consideration, the receipt of which is hereby acknowledged, the City and the Developer, for themselves, their successors and assigns, hereby covenant and agree as follows:

-3-

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 162-13265] RHB 2947, p. 0749, Printed 12/06/2007. Image available as of 12/16/2004.

JLB0063

2947 PAGE 750

### ARTICLE I

#### GENERAL TERMS OF CONVEYANCE OF PROPERTY

1:01.  Subject to the conditions of this Agreement and to the performance by the parties hereto of the duties and obligations on the part of each to be performed hereunder, the City hereby bargains and sells unto the Developer, and the Developer hereby purchases and buys from the City, in fee simple, subject to the restrictions, covenants, conditions, terms and provisions hereinafter mentioned and any easements specifically set forth in Schedule A annexed hereto and made a part hereof:

All that lot of land situate in the City of Baltimore, to be known as Lot Nos. 4 and 5, Chapel NDP (MD A-1), and more particularly described in Schedule A.

1:02. (A)  The purchase price for the property is Seventy Thousand Dollars ($70,000). The total purchase price shall be paid to the City at the time of settlement, as hereinafter provided.

(B)  The Developer has deposited with the City:  (i)  the amount of Three Thousand Five Hundred Dollars ($3,500) in cash or (ii) negotiable bonds of the United States Government, acceptable to the City, the total market value of which is no less than Three Thousand Eight Hundred Fifty Dollars ($3,850), (hereinafter called the "Deposit").  If the Developer has elected to make such Deposit in cash, the City shall have no obligation to pay interest thereon.  If the Developer has elected to make such Deposit in negotiable bonds, as hereinabove provided, any income collected thereon by the City shall be paid promptly to the Developer.  Said Deposit is to be retained by the City until either:

(a)  satisfactory completion of the Improvements, in accordance with Paragraph 3:02 of Article III of this Agreement, or

(b)  Developer furnishes the Department with all of the following:

- 4 -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13266] RHB 2947  p. 0750. Printed 12/08/2007. Image available as of :1/16/2004.

JLB0064

2947 PAGE 751

(i) a certified copy of the commitment or commitments for the permanent mortgage financing, if any;

(ii) evidence satisfactory to the Department that the Developer has the equity capital and commitments for the mortgage financing or refinancing necessary for the construction of the Improvements in accordance with Paragraph 3:15 of Article III of this Agreement;

(iii) a copy of the executed construction contract for the Improvements to be erected on the Property; and the Performance and Payment Bond or Bonds as required by Paragraph 3:07 of this Agreement.

The term "Improvements" as used in this Agreement shall be deemed to have reference to the structure and site preparation as shown in the Construction Plans; and

1:03. The settlement shall take place at FHA Initial Closing and shall be within twelve (12) months from the date of this Agreement, but in no event shall settlement take place prior to the approval by the Department of the Construction Plans and Specifications of the Developer (hereinafter referred to as "Construction Plans") as hereinafter provided and referred to in Paragraph 3:04 of Article III of this Agreement.

1:04. The City, at the time of settlement, will execute and deliver to the Developer a deed, including covenants of special warranty and further assurance, conveying the Property by a good and merchantable fee simple title subject to the restrictions, covenants, conditions, terms and provisions hereinafter mentioned and any easements specifically set forth in Schedule A.

1:05. The restrictive covenants described in Schedule B annexed hereto and made a part hereof to which the Property shall be subject and which shall operate as restrictive covenants binding upon the Developer, its successors and/or assigns, shall be binding on and running with said land until June 27, 2009 except the Restrictive Covenant 1(a), which shall run with the land forever.

1:06. The Developer shall pay, with respect to the conveyance of the Property hereinabove provided, any transfer tax, the premium for any title guaranty acquired by the Developer, the total cost of any documentary stamps required by law to be

*Schedule B*
*Until*
*JUNE 27, 2009*

*Civil Rights law*

- 5 -

JLB0065

2947 PAGE 752

affixed to each deed, and the full expense for the proper recording thereof among the land records of Baltimore City.

1:07.  The City, at the time of settlement, shall submit to the Developer, and the Developer shall then pay a tax equivalent charge on the Property on the basis of a tax assessment of seventy per cent (70%) of the sales price, calculated at the City and State tax rates, and prorated for the remainder of the taxable year in which settlement is made.

1:08.  The Developer agrees that should it seek an exemption from real estate taxes under the authority of either Article 44A, Section 22 or Article 81, Section 9 a-1 of the Annotated Code of Maryland, and should said exemption be granted, it will promptly negotiate an agreement providing for payments in lieu of taxes with the City of Baltimore.  The Developer also agrees that in consideration of the sale of the Property hereunder, it will abide by the decision of the appropriate officials of the City of Baltimore in determining its exempt status.  Should the Developer, through operation of law, effect of any statute passed by the General Assembly of Maryland, any judicial decision, or by passage of legislation by the City Council of Baltimore, obtain an exemption without the necessity of making a payment in lieu of taxes, then the Developer shall pay each year a tax equivalent charge on the Property on the basis of the then prevailing tax assessment on the land and improvements and calculated at the City and State tax rates then in effect.

1:09.  In the event that a mortgage securing money loaned to finance the Improvements, or any part thereof, is insured by the Federal Housing Administration, then the completion time as set forth in Paragraph 3:07 of this Agreement shall not apply, but instead the construction of such Improvements, or part thereof, shall be completed within the time specified in the applicable Building Loan Agreement approved by the Federal Housing Administration:  Provided, that the construction of such Improvements, or part thereof, as are subject to the foregoing proviso shall be completed within four years from the date of execution of such Building Loan Agreement.

1:10.  In the event that a mortgage securing money loaned to finance the Improvements, or any part thereof, is insured by the Federal Housing Administration, then the Certificate of Completion provided for in Paragraph 3:09 of this Agreement shall only be withheld because of failure to carry out specific requirements of

-5a-

JLB0066

## 2947 PAGE 753

the Renewal Plan or complete construction insofar as it is governed by
specific requirements of the Renewal Plan.

1.11.  The Developer, not less than thirty (30) days before the availability
of occupancy to tenants of the building, shall submit satisfactory evidence to
the Department that the Developer has extended for a period of not less than sixty
(60) days to all residents located within the Chapel Project Area as of June 27, 1969,
priority to lease and/or purchase residential space within the Improvements to be
erected on said Property under the following procedures:

(a)  Said Developer agrees to have inserted in at least two
    newspapers of general circulation public notices to whom
    it may concern that it will consider for a period of not
    less than sixty (60) days, applications from residents
    entitled to a priority to lease and/or purchase residential
    space in the Improvements to be erected on the Property.

(b)  Said Developer agrees to erect on the Property three signs,
    each of which is of a size at least 24" x 36" notifying the
    public that it will consider for a period of not less than
    sixty (60) days applications from residents entitled to a
    priority to lease and/or purchase residential space in said
    Project.

(c)  Applications by residents entitled to such priority shall
    be filed in duplicate with the Developer.  The Developer
    shall forward the duplicate copy of such application to the
    Department.

(d)  Said Developer agrees to transmit written letters on a
    one-time basis to all displacees made known to him in advance
    by name and address through records of the Relocation Division
    of the Department of Housing and Community Development to
    permit such former site occupants the opportunity to submit
    applications for purchase or lease of those dwelling units
    being made available through this disposition agreement.
    These notice letters shall be forwarded by the Developer not
    less than sixty (60) days nor more than ninety (90) days prior
    to the expected date of availability of the first dwelling
    unit within this development complex.

-5b-

JLB0067

**2947** PAGE **754**

(e) Said Developer also agrees to attach a priority to those applications of governmental displacees who submit certificates of priority for occupancy of dwelling units in this development subsequent to the initial completion of the original leasing period. Said priorities shall be recognized by the Developer for a period of not less than twenty-four (24) months from the date of issuance of the certification.

In the event of any question or dispute whether a resident seeking relocation in the area covered by this Agreement qualifies under the conditions above set out, such question or dispute shall be decided by the Department whose determination thereon shall be final and conclusive upon the Developer and any other party to such dispute. In the event that more applicants apply for a priority to lease and/or purchase space than can be accommodated in the space available, the Developer shall have the right to select those applicants to which space will be leased and/or sold. The Developer, prior to the commencement of said sixty (60) day period, shall place advertisements in at least two newspapers of general circulation notifying said residents of the availability of said priority; the advertisement should be in substantially the following form:

TO WHOM IT MAY CONCERN:

The ___Chapel Housing Partnership___, Developer of Lots Nos. 4 and 5, Chapel NDP (MD A-1)___, 19 72 , extends to residents located within the Chapel Project Area as of June 27, 1969, a priority to lease and/or purchase residential space within the Improvements to be erected by said Developer.

Those interested should apply at the address below. In the event that more residents apply for this priority than can be accommodated in the space available, the undersigned Developer reserves the right to select those applicants to which space will be leased and/or sold and to pass upon the acceptability of any tenant and/or purchaser.

The Developer shall submit to the Department within thirty (30) days after the expiration of said sixty (60) day period the following:  Certified

-50-

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-3265] RHB 2947, p. 0754 Printed 12/08/2007. Image available as of 11/16/2004

JLB0068



2947 755

copies of the advertisements placed by the Developer in at least two news-
papers of general circulation; a duplicate copy of each application filed;
and if requested by the Department, a copy of all leases or deeds executed
and a notarized record of all communications with applicants.

-54-

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 165-13205] RHB 2947, p 0755. Printed 12/06/2007. Image available as of 11/18/2004

JLB0069

ARTICLE II   2947 PAGE 756

PREPARATION OF LAND FOR DEVELOPMENT

2:01.  To the extent that it has not already done so, the City shall, without expense to the Developer, prepare the Property for the redevelopment thereof by the Developer.  Such preparation shall consist of the demolition or removal to grade of all buildings, obstructions or structures on the Property, including the removal of debris and the filling of all cellar holes to grade with earth and/or sound material resulting from such demolition, which may be brick, mortar or plaster.  Basement walls below grade level and paved surfaces within the Property will be left intact.

2:02.  The City, without expense to the Developer or public assessment against the Property, and prior to the completion of the Improvements, shall provide for or secure the following insofar as they are necessary and directly related to the development of the Property or that portion of the Property that has been conveyed:

(a)  Such paving, improving, construction, resurfacing or rebuilding of all streets, curbs and gutters and such installation of all street lighting as are to be provided by the Renewal Plan, and the preparation and introduction in the City Council of Baltimore City of proper ordinances for the opening of such new streets and closing of such existing street and alley rights-of-way in the Property, as are to be installed, relocated and/or abandoned in accordance with said Renewal Plan.

(b)  Such abandonment, installation and relocation or other adjustment of water mains, sanitary sewers, storm drains, gas and electric distribution lines and conduits as are required by the Renewal Plan.

2:03.  All of the matters and things, and all the work of operations to be done or performed by the City under Paragraph 2:02 of Article II of this Agreement shall be accomplished, done or performed in accordance with plans and specifications therefore prepared and/or approved by the Director of Public Works of the City, and as set forth in the various exhibits attached to the Renewal Plan, as rapidly as practicable, and within the time limits herein provided at no charge of any kind to the Developer.

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13265] RHB 2947, p. 0756  Printed 1/03/2007.  Image available at 11/18/2004

JLB0070

ARTICLE III   2947 LIBE 757

CONSTRUCTION OF IMPROVEMENTS

3:01.  The Developer, as soon as possible after the execution of this Agreement and, in any event, prior to beginning the preparation of Final Preliminary Drawings and Specifications (hereinafter called "Preliminary Plans"), shall confer with the Department on the functional and aesthetic aspects of such Preliminary Plans.  Following this initial conference, the Developer agrees to attend periodic conferences called by the Department for the same purpose while Preliminary Plans and Construction Plans are being prepared.

3:02.  Preliminary Plans and Construction Plans and all work by the Developer with respect to the Property and the construction of the Improvements thereon shall be in conformity with the Renewal Plan, this Agreement, the Building Code and Sub-division Regulations of Baltimore City and all other applicable State and Local laws and regulations and in substantial conformity with the proposal of the Developer.

3:03.  The Developer, within three (3) months after the execution of this Agreement, shall submit to the Department for its approval the Schematic Plans for the Improvements to be constructed by the Developer on the Property, including one black and white architect's rendering from an aerial perspective taken from a view point which would show the front and one side of the said Improvements and the relationship of the said Improvements to adjoining structures.  If such Schematic Plans in the opinion of the Department conform to the provisions of the Renewal Plan and this Agreement and substantially conform to the proposal of the Developer, and are functionally and aesthetically desirable, the Department shall formally approve said Schematic Plans as "Final Preliminary Plans".  The Schematic Plans shall, in any event, be deemed to have been approved by the Department unless formally rejected, in whole or in part, within thirty (30) days after their submission, as not being in conformity with the Renewal Plan or this Agreement or as not being in substantial conformity with the proposal of the Developer or as not being functionally and aesthetically desirable. The Developer, in such event, shall  submit new or corrected plans within thirty (30) days after written notification to it of the rejection, and the provisions of this Paragraph relating to approval, rejection and resubmission of corrected plans herein-above provided with respect to the original Schematic Plans shall continue to apply until the Schematic Plans have been approved by the Department:  Provided, that in any

- 7 -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13205] RHB 2947, p. 0757. Printed 12/06/2007. Image available as of 11/18/2004.

JLB0071

event the Developer shall submit Schematic Plans which are acceptable as Final Preliminary Plans no later than two (2) months after the original submission of Schematic Plans.

3:04.  The Developer, within one hundred twenty (120) days after the approval of Final Preliminary Plans and, as a condition precedent to the obligations of the City to convey the Property to the Developer, shall submit to the Department, for its approval, the Working Drawings for the Improvements.  If such Working Drawings in the opinion of the Department conform to the provisions of the Renewal Plan and this Agreement and to the Final Preliminary Plans previously approved by the Department, are functionally and aesthetically desirable and include a Development Plan approved by the Planning Department of the City of Baltimore, the Department shall formally approve said Working Drawing as "Final Construction Plans".  Such approval shall not relieve the Developer of the legal responsibility of filing said Final Construction Plans with the Division of Construction and Building Inspection of the Department and said Developer shall obtain appropriate building and other permits in accordance with law.  The Working Drawings shall, in any event, be deemed to have been approved by the Department unless formally rejected, in whole or in part, within forty-five (45) days after their submission.  If the Department rejects the Working Drawings, in whole or in part, as not being in conformity with the Renewal Plan or this Agreement or the Final Preliminary Plans approved by the Department, or as not being functionally or aesthetically desirable, or as not having received the approval of other City depart-ments, the Developer shall submit new or corrected Plans within forty-five (45) days after written notification to it of the rejection, and the provisions of this Paragraph relating to the approval, rejection, and the submission of correct Plans hereinabove provided with respect to the original Working Drawings shall continue to apply until Working Drawings have been approved by the Department:  _Provided_, in any event, that the Developer shall submit Working Drawings which are acceptable as Final Construction Plans no later than six (6) months after approval by the Department of the Final Preliminary Plans, and:  _Provided_, in any event, that the Developer shall submit Working Drawings which are acceptable as Final Construction Plans not later than twelve (12) months after the execution of this Agreement.

3:05.  The Preliminary Plans and Construction Plans referred to in Paragraphs 3:03 and 3:04 of Article III must also conform to the requirements of the Commission for Architectural and Historical Preservation of Baltimore City providing the Property lies in an area that is within the jurisdiction of that Commission.

- 6 -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13,205] RHB 2947, p. 0758, Printed 12/06/2007  image available as of 11/18/2004.

2947 ᴵᴬᴵ 759

3:06.  The Developer, after the City acquires title to and possession of the Property or any part thereof and prior to delivery of possession of the Property of any part thereof to the Developer, shall have access thereto at reasonable times, agreeable to the Department whenever and to the extent necessary to carry out the provisions of this Agreement.  The Developer, subsequent to such delivery of possession, shall permit access to the Property to the Department, the United States of America and the City, or any agent thereof, whenever and to the extent necessary to carry out the provisions of this Agreement and the contract for Capital Grant between the United States of America and the City.  In neither case, shall there be any compensation payable or charge made in any form to either party for any such access.

3:07.  The Developer, within thirty (30) days from the date of the Deed from the City, shall commence the construction of the Improvements and shall complete the same in strict accordance with the Construction Plans, and perform the said renewal work within a period of twelve (12) months from the date of said Deed.  Prior to the commencement of construction, the Developer shall furnish to the Department a copy of the executed construction contract for the Improvements to be erected on the Property, and furnish to the Department Performance and Payment Bond or Bonds, with sureties approved by the Department, in an amount equal to ten per cent (10%) of the contract cost of the Improvements conditioned upon the faithful performance of the construction contract and payment for all labor and materials, said Bonds to be payable to the Developer and any mortgagee, as their interests may appear.

3:08.  The Developer, subsequent to the conveyance of the Property to the Developer, and until construction of the Improvements has been completed, shall make, in such detail as may reasonably be required by the Department, a report in writing to the Department every ninety (90) days as to the actual progress of the Developer with respect to such development and construction.  During such period, also, the work of the Developer shall be available for inspection by the representatives of the Department. Any proposed change, alteration or addition prior to completion of the Improvements shall be submitted in writing for approval by the Department, with Preliminary and Construction Plans reflecting such changes, alterations or additions.

3:09.  The Department, promptly after the completion of the Improvements in accordance with the provisions of this Agreement relating solely to the obligations of the Developer to construct the Improvements (including the dates for beginning and completion thereof), shall furnish the Developer with an appropriate instrument so

- 9 -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168 11(263) RHB 2947, p. 0759. Printed 12/08/2007 Image available as of 11/18/2004

JLB0073

**2947 PAGE 760**

certifying, which shall be in such form as will enable it to be recorded among the Land Records of Baltimore City. Such certification by the Department shall be (and it shall be so provided in the Deed and in the certification itself) a conclusive determination of satisfaction and termination of the agreements and covenants in this Agreement and in the Deed with respect to the obligations of the Developer, its successors and assigns, and every successor in interest to the Property, to construct the Improvements and the dates for the beginning and completion thereof, and that the right of reverter provided for in Paragraph 8:02 hereof is extinguished. Provided that (a) if there is upon the Property a mortgage insured, or held, or owned, by the Federal Housing Administration and the Federal Housing Administration shall have determined that all buildings constituting a part of the Improvements and covered by such mortgage are, in fact, substantially completed in accordance with the Construction Plans and are ready for occupancy, then, in such event, the Department and the Developer shall accept the determination of the Federal Housing Administration as to such completion of the construction of the Improvements in accordance with the Construction Plans, and, if the other agreements and covenants in this Agreement obligating the Developer in respect of the construction and completion of the Improvements have been fully satisfied, the Department shall forthwith issue its certification provided for in this Paragraph 3:09. Such certification and such determination shall not constitute evidence of compliance with or satisfaction of any obligation of the Developer to any holder of a mortgage, or any insurer of a mortgage, securing money loaned to finance the Improvements, or any part thereof. (b) With respect to such individual parts or parcels of the Property which, if so provided in this Agreement, the Developer may convey or lease as the Improvements to be constructed thereon are completed, the Department will also, upon proper completion of the Improvements relating to any such part or parcel, certify to the Developer that such Improvements have been made in accordance with the provisions of the Agreement. Such certification shall mean and provide, and the Deed shall so state, (1) that any party purchasing or leasing such individual part or parcel pursuant to the authorization herein contained shall not (because of such purchase or lease) incur any obligation with respect to the construction of the Improvements relating to such part or parcel or to any other part or parcel of the Property; and (2) that neither the Department nor any other party shall thereafter have or be entitled to exercise with respect to any such individual part or parcel so sold (or, in the case

- 10. -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 148-13363] RHB 2947, p. 0760. Printed 12/05/2007. Image available as of 11/18/2004

JLB0074

**2947 PAGE 761**

of lease, with respect to the leasehold interest) any rights or remedies or controls that it may otherwise have or be entitled to exercise with respect to the Property as a result of a default or in breach of any provisions of the Agreement or the Deed by the Developer or any successor in interest or assign, unless (i) such default or breach be by the purchaser or lessee, or any successor in interest to or assign of such individual part or parcel with respect to the covenants contained and referred to in Schedule B, attached hereto and made a part hereof, and (ii) the right, remedy, or controls relates to such default or breach. (c) If the Department shall refuse or fail to provide such certification in accordance herewith, within thirty (30) days after written request therefor by the Developer, then the Department shall provide the Developer with a written statement indicating in adequate detail in what respects the Developer has failed to complete the Improvements in accordance with the provisions of this Agreement, or is otherwise in default, and what measures and acts, in the opinion of the Department, the Developer shall take or perform in order to obtain such certification of completion. Any refusal to provide such certification shall not be capricious or unreasonable. The City, at time of furnishing the Developer with the Certificate of Completion, shall return any deposit retained by the City as security for performance by the Developer without any obligation to pay interest thereon.

3:10. The Developer, at its sole cost and expense, will install or cause to be installed all necessary connections between the Improvements constructed or erected by it on the Property and the water, sanitary sewer and storm drain mains and mechanical and electrical conduits owned by the City, and shall provide, construct and maintain all necessary footways along the highway frontage of the Property and within the right-of-way lines of the relocated or retained highways abutting on and forming the perimeter of said Property.

3:11. The Developer shall secure any and all permits and approvals required by the City to perform any and all of the work or operations contemplated to be done or performed by the Developer under any of the provisions of this Agreement and shall pay any and all fees and charges due to and collected by the City in connection with the issuance of any such permits and approvals.

3:12. The Developer, at its sole cost and expense, shall secure or cause to be secured from a company or companies acceptable to the Department, and shall maintain

- 11 -

JLB0075

2947 ink 762

in full force and effect during the period of time between the execution of this agreement and the execution of the deed conveying title and possession to the Developer, such insurance as will protect the Developer and the City, their agents and employees, from any and all claims or damages for personal injuries, including death, or for damages to any property of the City or of the public, which may arise out of or in connection with any construction or development operations on the Property, whether said work or operations be by the Developer, or its contractors or subcontractors, or anyone directly or indirectly employed by any of them.  The amount of such insurance shall not be less than One Hundred Thousand Dollars ($100,000.00) for injury sustained by any one person, Three Hundred Thousand Dollars ($300,000.00) for injury sustained by two or more persons in any one accident, and Fifty Thousand Dollars ($50,000.00) for property damage.  A copy of the insurance policy, which provides that it cannot be cancelled without fifteen (15) days prior notice to the Department, shall be furnished to the Department by the Developer for approval by the City Law Department.  If this Disposition Agreement is entered into before the City acquires the Property, the Developer need not furnish the insurance contemplated herein until the Developer enters upon the Property or until the Department gives notice in writing that the Property is available for development, whichever shall first occur.

3:13.  The Developer will comply in every respect with any and all Federal, State and municipal laws, ordinances, rules, regulations, orders, and notices now or hereafter in force or issued which may be applicable to any and all of the work or operations to be done, performed or carried on by the Developer under the provisions of this Agreement.

3:14.  The times within which the Developer must submit Preliminary Plans, Construction Plans, evidence of equity capital, commitments for mortgage financing, and the times within which the Developer must commence and complete the development of the Property and the Construction of the Improvements thereon, and the time for settlement and delivery of the deed as specified in Paragraphs 1:03 and 1:04 of Article I and as specified in Paragraphs 3:03, 3:04, 3:07 and 3:15 of Article III may be extended in writing by the Department, in its sole discretion, upon good and sufficient cause therefor being shown by the Developer, for such periods of time as the Department deems advisable.  Any such extension of time shall be in writing and in such form as will enable it to be recorded among the Land Records of Baltimore City.

-12-

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 162-13265] RHB 2947, p 0762. Printed 12/03/2007  Image available as of. 11/18/2004

JLB0076

**2947 PAGE 763**

3:15.  The Developer, within not more than six (6) months after the execution of this Agreement and as a condition precedent to the obligation of the City to convey the Property, shall submit evidence satisfactory to the Department that the Developer has the equity capital and commitments for the mortgage financing or refinancing necessary for the construction of the Improvements.

3:16.  The Developer, for itself, and its successors and/or assigns, agrees that in the construction of the Improvements, in accordance with the provisions of this Agreement, it will comply fully with the provisions of the Federal Government relating to equal employment opportunity as set forth as follows:

(a)  The Developer will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The Developer will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin.  Such action shall include, but not be limited to, the following:  employment, upgrading,  demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship.  The Developer agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the Department setting forth the provisions of this nondiscrimination clause.

(b)  The Developer will, in all solicitations or advertisements for employees placed by or on behalf of the Developer, state that qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

(c)  The Developer will send to each labor union or representative of workers with which the Developer has a collective bargaining agreement or other contract or understanding, a notice to be provided by the Department, advising the labor union or workers' representative of the Developer's commitments under Section 202 of the Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

– 13 –

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13285] RHB 2947, p. 0763, Printed 12/08/2007  Image available as of 11/18/2004

JLB0077

## 2947 PAGE 764

(d) The Developer will comply with all provisions of Executive
Order No. 11246 of September 24, 1965, and of the rules, regu-
lations, and relevant orders of the Secretary of Labor.

(e) The Developer will furnish all information and reports required
by Executive Order No. 11246 of September 24, 1965, and by the
rules, regulations, and orders of the Secretary of Labor or the
Secretary of Housing and Urban Development pursuant thereto,
and will permit access to the Developer's books, records, and
accounts by the Department and the Secretary of Housing and Urban
Development and the Secretary of Labor for purpose of investi-
gation to ascertain compliance with such rules, regulations, and
orders.

(f) In the event of the Developer's noncompliance with the nondis-
crimination clauses of this Section, or with any of the said rules,
regulations, or orders, the Agreement may be cancelled, terminated,
or suspended in whole or in part and the Developer may be declared
ineligible for further Government contracts, or Federally assisted
construction contracts in accordance with procedures authorized
in Executive Order No. 11246 of September 24, 1965, and such other
sanctions may be imposed and remedies invoked as provided in
Executive Order No. 11246 of September 24, 1965, or by rule, regu-
lation, or order of the Secretary of Labor, or as otherwise provided
by law.

(g) The Developer will include the provisions of paragraphs (a) through
(g) of this Section in every contract or purchase order, and will
require the inclusion of these provisions in every subcontract
entered into by any of its contractors, unless exempted by rules,
regulations, or orders of the Secretary of Labor issued pursuant
to Section 204 of Executive Order No. 11246 of September 24, 1965,
so that such provisions will be binding upon each such contractor,
subcontractor, or vendor, as the case may be. The Developer will
take such action with respect to any construction contract, subcon-
tract, or purchase order as the Department or the Department of Housing

- 14 -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13256] RHB 2947, p. 0764 Printed 12/06/2007 Image available as of 11/13/2008

**2947 PAGE 765**

and Urban Development may direct as a means of enforcing
such provisions, including sanctions for noncompliance;
Provided, however, that in the event the Developer becomes
involved in, or is threatened with, litigations with a
subcontractor or vendor as a result of such direction by
the Department or the Department of Housing and Urban Development,
the Developer may request the United States to enter into such
litigation to protect the interests of the United States.  For
the purpose of including such provisions in any construction
contract, subcontract, or purchase order, as required hereby,
the first three lines of this Section shall be changed to read:
"During the performance of this Contract, the Contractor agrees
as follows: and the term "Developer" shall be changed to
"Contractor".

3:17.  The Developer, for itself, and its successors and/or assigns, agrees
that in the construction of the Improvements in accordance with the provisions of
this Agreement, it will comply fully with the provisions of the City of Baltimore
relating to unlawful employment practice, as set forth as follows:

The Developer will require that the contractor and all subcontractors
shall not engage in any unlawful employment practice prohibited by
Section 10 of Article 4 of the Baltimore City Code (1966 Edition)
in connection with the structures to be built and work to be done
under this contract.  The following shall constitute an "unlawful
employment practice" for the purposes of this contract:

(a)  For the contractor or any subcontractor, because of the
race, color, creed, national origin or ancestry of any
individual, to refuse to hire or otherwise to discrimi-
nate against him with respect to hire, tenure, promotion,
terms, conditions or privileges of employment or any
matter directly or indirectly related to employment.

- 15 -

BALTIMORE CITY SUPERIOR COURT (Land Records) HJSA CE 468, 17255) BRB 2947, p. 0765. Printed 12/06/2007. Image available as of 11/18/2004

JLB0079

2947 PAGE 706

(b) For the contractor or any subcontractor to establish, announce or follow a policy of denying or limiting through a quota system or otherwise, employment or membership opportunities to any individual because of race, color, creed, national origin or ancestry.

(c) For the contractor or any subcontractor prior to employment to:

    1. Make any inquiry concerning or record the race, color, creed, national origin or ancestry of any applicant for employment.

    2. Use any form of application for employment of personnel containing questions or entries regarding race, color, creed, national origin or ancestry.

    3. Cause to be printed, published or circulated any notice or advertisement relating to employment indicating any preference, limitation, specification or discrimination based upon race, color, creed, national origin or ancestry.

(d) For the contractor or any subcontractor to penalize or discriminate in any manner against any individual because he has opposed any unlawful employment practice as herein defined, or because he has made a charge, testified or assisted in any manner in any investigation, proceeding or hearing conducted by the Baltimore Community Relations Commission.

(e) For the contractor or any subcontractor to aid, abet, incite, compel or coerce the commission of any unfair employment practice as defined herein, or to obstruct or prevent any person from complying with the provisions of Section 10 of Article 4 of the Baltimore City Code (1966 Edition) as aforesaid, or any order issued thereunder, or to attempt, directly or indirectly, to commit any unfair employment practice.  In the event that a complaint shall be made against the contractor or a subcontractor by a person claiming to have been the subject of an unlawful employment practice, in that he has been discriminated against in respect to hire, tenure or promotion, then in consideration of the City forebearing to take any other action to establish the said alleged violation

- 16 -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-1326.5] RHB 2947, p. 0706. Printed 12/06/2007. Image available as of 11/18/2004.

JLB0080

2947 PAGE 767

of the foregoing provision and to claim a breach of this contract
thereunder and asserting its rights and pursuing any other remedies
it might have because of said breach, the contractor agrees that,
upon the following procedure being followed, he will abide by the
determination made thereunder as hereinafter provided:

1. The person aggrieved shall file his complaint, in writing,
   duly verified, with the Commissioner of Housing and Community
   Development (hereinafter referred to as "Commissioner") within
   seven (7) days after the alleged discriminatory act shall have
   occurred.

2. The Commissioner shall thereupon promptly appoint an employee
   of the Department who shall investigate the complaint and may
   effect an amicable settlement thereof (including, but not
   limited to, restitution, reinstatement or promotion), or failing
   that, shall make a finding of probable cause for the said
   complaint or lack of it.

3. If the finding of such employee shall be that the complaint
   lacked probable cause, then he is empowered to dismiss said
   complaint and no further action shall be taken in the matter
   by the City. If the appointed employee shall find probable
   cause for said complaint and shall fail to effect an amicable
   adjustment thereof, then the complaint thereof shall be submitted to
   the Commissioner for his final determination as referee with
   the same powers granted him in this contract with respect to
   other disputes rising thereunder. If the final determination
   is that the contractor or subcontractor, if any, is guilty of
   the discriminatory act charged then the contractor and/or his
   surety on his bond shall be liable to the discriminatee
   for all wages which he shall have lost because of such
   discriminatory act, and the amount of such lost wages shall
   be determined by the Commissioner, whose decision thereon
   shall be final and conclusive on the contractor, his surety,

- 17 -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-1966] RNB-321T, p. 0767, Printed 12/08/2007. Image available as of 11/18/2004

JLB0081

**2947 PAGE 768**

the subcontractor, if any, and the discriminatee; and if
there shall be any balance then due from the City to the
Developer, the amount of wages so determined to be due to the
discriminatee may be withheld by the City (in addition to any
other sums to which the City may be entitled to withhold under
the contract) until full restitution of such lost wages shall
have been made by the Contractor to the discriminatee in
accordance with the determination of the Commissioner. The
Contractor further agrees that such discriminatee shall have
a right of action against said Contractor and/or his surety on
his bond to recover the amount of such lost wages by suit at
law in any court of competent jurisdiction. The Commissioner
and his appointed employee may utilize the services and seek
the advice of any other agency of the City or employee thereof
to assist them in making their respective determinations
hereunder.

The procedure and remedy outlined above is not to be construed
as in any way depriving any person alleged to have been the sub-
ject of an unlawful practice as defined herein from pursuing any
remedy he may have under Section 10 of Article 4 of the Baltimore
City Code (1966 Edition), nor shall such procedure or remedy be
construed as preempting the right of the Baltimore Community
Relations Commission to take such action as it is authorized to
and may deem proper under the aforementioned ordinances. The
Contractor further agrees to insert in each of his subcontracts
the above provisions with respect to unlawful employment practices
and to obtain the agreement of all his subcontractors thereto
and to the procedure hereinabove set forth.

A brief statement giving notice of the aforegoing provisions, entitled
"Prohibition Against Discrimination", approved by the City Solicitor,
shall be posted in conspicious places at and about the job site and
at any hiring hall or place of employment from which the contractor or
subcontractor hires employees to work on the job site.

- 18 -

JLB0082

2947 PAGE 769 -

3:18. The Developer, for itself and its successors and/or assigns, agrees that construction contracts and subcontracts for the construction of the improvements shall contain binding commitments that the contractors and subcontractors will comply with Paragraphs 3:16 and 3:17 of this Agreement: Provided, that if the amount of the respective construction contracts or subcontracts is $100,000 or more, then the contractors or subcontractors will submit three (3) copies of their respective Affirmative Action Plans for Equal Employment Opportunity to the Developer for submission to and approval by the Department prior to the commencement of construction.

- 16a -


BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13265] RHB 2947, p. 0769. Printed 12/08/2007. Image available as of 11/18/2004

JLB0083

2947 PAGE 770

ARTICLE IV

RESTRICTIONS UPON USE OF PROPERTY

4.01. The Developer agrees for itself, and its successors and/or assigns, and every successor in interest to the Property, or any part thereof, and the Deed shall contain covenants on the part of the Developer for itself, and such successors and/or assigns, that the Developer, and such successors and/or assigns, shall:

(a) Devote the Property to, and only to and in accordance with the uses specified in the aforesaid Urban Renewal Plan;

(b) Not discriminate upon the basis of race, color, religion, sex or national origin in the sale, lease, or rental or in the use or occupancy of the Property or any improvements erected or to be erected thereon, or any part thereof.

4.02. It is intended and agreed, and the Deed shall so expressly provide, that the agreements and covenants provided in Paragraph 4.01 hereof shall be covenants running with the land and that they shall, in any event, and without regard to technical classification or designation, legal or otherwise, and except only as otherwise specifically provided in the Agreement, be binding, to the fullest extent permitted by law and equity, for the benefit and in favor of, and enforceable by, the City and any successor in interest to the Property, or any part thereof, and the owner of any other land (or of any interest in such land) in the Project Area which is subject to the land use requirements and restrictions of the Urban Renewal Plan, and the United States (in the case of the covenant provided in subdivision (b) of Paragraph 4.01 hereof) against the Developer, its successors and assigns and every successor in interest to the Property, or any part thereof or any interest therein, and any party in possession or occupancy of the Property or any part thereof. It is further intended and agreed that the agreement and covenant provided in Paragraph 4.01 (a) hereof shall remain in effect for the period of time, or until the date, specified or referred to in Paragraph 1.05 of Article I (at which time such agreement and covenant shall terminate) and that the agreements and covenants provided in subdivision (b) of Paragraph 4.01 hereof shall remain in effect without limitation as to time; provided, that such agreements and covenants shall be binding on the Developer

-15-

JLB0084

2947 PAGE 771

itself, each successor in interest to the Property, and every part thereof, and each party in possession or occupancy, respectively, only for such period as such successor or party shall have title to, or an interest in, or possession or occupancy of, the Property or part thereof. The term "uses specified in the Urban Renewal Plan" and "land use" referring to provisions of the Urban Renewal Plan, or similar language, in the Agreement shall include the kind and all building, housing, and other requirements or restrictions of the Urban Renewal Plan pertaining to such land.

4.03. In amplification, and not in restriction of, the provisions of the preceding Paragraph, it is intended and agreed that the City and its successors and assigns shall be deemed beneficiaries of the agreements and covenants provided in Paragraph 4.01 hereof, and the United States shall be deemed a beneficiary of the covenant provided in subdivision (b) of Paragraph 4.01 hereof, both for and in their or its own right and also for the purposes of protecting the interests of the community and other parties, public or private, in whose favor or for whose benefit such agreements and covenants have been provided. Such agreements and covenants shall (and the Deed shall so state) run in favor of the City and the United States, for the entire period during which such agreements and covenants shall be in force and effect, without regard to whether the City or the United States has at any time been, remains, or is an owner of any land or interest therein to or in favor of which such agreements and covenants relate. The City shall have the right, in the event of any breach of any such agreement or covenant, and the United States shall have the right in the event of any breach of the covenant provided in subdivision (b) of Paragraph 4.01 hereof, to exercise all the rights and remedies, and to maintain any actions or suits at law or in equity or other proceedings to enforce the curing of such breach of agreement or covenant, to which it or any other beneficiaries of such agreement or covenant may be entitled.

4.04. Advertising. The Developer agrees for itself, its successors and assigns, that during construction and thereafter the Developer and its successors and assigns shall include in all advertising (including signs) for sale and/or rental of the whole or any part of the Property shall include the legend "An Open Occupancy Building" in type or lettering of easily legible size and design. The word "Project" or "Developer" may be substituted for the word "Building" where circumstances require such substitution. There shall be no discrimination in public access or use of the Property or development thereon to the extent that they are open to the public.

-26-

JLB0085

2947 ᵢₙₐ 772
ARTICLE V

ANTI-SPECULATION AND ASSIGNMENT PROVISIONS

5:01. The Developer represents and agrees that its purchase of the Property and its other undertakings pursuant to the Agreement, are, and will be used, for the purpose of development of the Property and not for speculation in land holding. The Developer further recognizes that, in view of

(a) the importance of the development of the Property to the general welfare of the community;

(b) the substantial financing and other public aids that have been made available by law and by the Federal and local Governments for the purpose of making such development possible; and

(c) the fact that a transfer of the stock in the Developer or of a substantial part thereof, or any other act or transaction involving or resulting in a significant change in the ownership or distribution of such stock or with respect to the identity of the parties in control of the Developer or the degree thereof, is for practical purposes a transfer or disposition of the Property then owned by the Developer,

the qualifications and identity of the Developer, and its stockholders, are of particular concern to the community and the City. The Developer further recognizes that it is because of such qualifications and identity that the City is entering into the Agreement with the Developer.

5:02. For the foregoing reasons, the Developer represents and agrees for itself, its stockholders, and any successor in interest of itself and its stockholders, respectively, that: Prior to completion of the Improvements as certified by the Department, and without the prior written approval of the Department, (a) there shall be no transfer by any party owning 10 percent or more of the stock in the Developer (which term shall be deemed for the purposes of this and related provisions to include successors in interest of such stock or any part thereof or interest therein), (b) nor shall any such owner suffer any such transfer to be made, (c) nor shall there be or be suffered to be by the Developer, or by any owner of 10 percent or more of the stock

-21-

JLB0086

2947 PAGE 773

therein, any other similarly significant change in the ownership of such stock or in
the relative distribution thereof, or with respect to the identity of the parties
in control of the Developer or the degree thereof, by any other method or
means, whether by increased capitalization, merger with another corporation, corporate
or other amendments, issuance of additional or new stock or classification or stock,
or otherwise. With respect to this provision, the Developer and the parties
signing the Agreement on behalf of the Developer represent that they have the
authority of all of its existing stockholders to agree to this provision on their
behalf and to bind them with respect thereto.



-21a-

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-1\3285) RHB 2947, p. 0773. Printed 12/08/2007. Image available as of 11/18/2004.

2947 PAGE 774

5:03.  Also, for the foregoing reasons the Developer represents and agrees for itself, its heirs, successors and assigns, that:

    (a)  Except only

        (1)  by way of security for, and only for, (i) the purpose of obtaining financing necessary to enable the Developer or any successor in interest to the Property, or any part thereof, to perform its obligations with respect to making the Improvements under the Agreement, and (ii) any other purpose authorized by the Agreement, and

        (2)  as to any individual parts or parcels of the Property on which the Improvements to be constructed thereon have been completed, and which, by the terms of the Agreement, the Developer is authorized to convey or lease as such Improvements are completed,

the Developer (except as so authorized) has not made or created, and that it will not, prior to the proper completion of the Improvements as certified by the Department, make or create, or suffer to be made or created, any total or partial sale, assignment, conveyance, or lease, or any trust or power, or transfer in any other mode or form of or with respect to the Agreement or the Property, or any part thereof or any interest therein, or any contract or agreement to do any of the same, without the prior written approval of the Department:  Provided, That, prior to the issuance by the Department of the certificate provided for in Paragraph 3:09 hereof as to completion of construction of the Improvements, the Developer may enter into any agreement to sell, lease, or otherwise transfer, after the issuance of such certificate, the Property or any part thereof or interest therein, which agreement shall not provide for payment of or on account of the purchase price or rent for the Property, or the part thereof or the interest therein to be so transferred, prior to the issuance of such certificate:  And provided further, that nothing in this Article or any other Article of this Agreement shall be construed as prohibiting the Developer, prior to the issuance by the Department of Certificate of Completion provided for in Paragraph 3:09 of Article III, from entering into agreements to lease, or from leasing, any units or other space in the Improvements when, under the applicable laws, codes and regulations of the City, such units or space may be occupied.

    (b)  The Department shall be entitled to require, except as otherwise provided in the Agreement, as conditions to any such approval that:

- 22 -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 162-13265] RHB 2947, p. 0774  Printed 12/06/2007. Image available as of 1/1/2004

JLB0088

**2947** PAGE **775**

necessary and adequate to fulfill the obligations undertaken
in the Agreement by the Developer (or, in the event the
transfer is of or relates to part of the Property, such
obligations to the extent that they relate to such part).

(2)   Any proposed transferee, by instrument in writing satis-
factory to the Department and in form recordable among the
Land Records, shall, for itself and its successors and assigns,
and expressly for the benefit of the City, have expressly
assumed all of the obligations of the Developer under the
Agreement and agreed to be subject to all the conditions and
restrictions to which the Developer is subject (or, in the
event the transfer is of or relates to part of the Property,
such obligations, conditions, and restrictions to the extent
that they relate to such part): provided, That the fact that
any transferee of, or any other successor in interest whatsoever
to, the Property, or any part thereof, shall, whatever the
reason, not have assumed such obligations or so agreed, shall
not (unless and only to the extent otherwise specifically pro-
vided in the Agreement or agreed to in writing by the Department)
relieve or except such transferee or successor of or from such
obligations, conditions, or restrictions, or deprive or limit
the City of or with respect to any rights or remedies or controls
or with respect to the Property or the construction of the
Improvements; it being the intent of this, together with other
provisions of the Agreement, that (to the fullest extent permitted
by law and equity and excepting only in the manner and to the
extent specifically provided otherwise in the Agreement) no
transfer of, or change with respect to, ownership in the Property
or any part thereof, or any interest therein, however consummated
or occurring, and whether voluntary or involuntary, shall operate,
legally or practically, to deprive or limit the City of or with

-23-

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13266] RHB 2947, p 0775. Printed 12/08/2007 Image available as of 11/16/2002

JLB0089

**2947 PAGE 776**

respect to any rights or remedies or controls provided
in or resulting from the Agreement with respect to the
Property and the construction of the Improvements that the
City would have had, had there been no such transfer or
change.

(3) There shall be submitted to the Department for review all
instruments and other legal documents involved in effecting
transfers; and if approved by the Department, its approval
shall be indicated to the Developer in writing.

(4) The consideration payable for the transfer by the transferee
or on its behalf shall not exceed an amount representing the
actual cost (including carrying charges) to the Developer of
the Property (or allocable to the part thereof or interest
therein transferred) and the Improvements, if any, theretofore
made thereon by it; it being the intent of this provision to
preclude assignment of the Agreement or transfer of the Property
(or any parts thereof other than those referred to in sub-
division (2), subparagraph (a) of this Paragraph 5.03 for profit
prior to the completion of the Improvements and to provide that
in the event any such assignment or transfer is made (and is not
cancelled), the City shall be entitled to increase the Purchase
Price to the Developer by the amount that the consideration
payable for the assignment or transfer is in excess of the amount
that may be authorized pursuant to this subdivision (4), and such
consideration shall, to the extent it is in excess of the amount
so authorized, belong to and forthwith be paid to the City.

(5) The Developer and its transferee shall comply with such other con-
ditions as the Department may find desirable in order to achieve
and safeguard the purposes of the Urban Renewal Act and the
Urban Renewal Plan.

-24-

**2947 PAGE 777**

Provided, That in the absence of specific written agreement by the Department to the contrary, no such transfer or approval by the Department thereof shall be deemed to relieve the Developer, or any other party bound in any way by the agreement or otherwise with respect to the construction of the Improvements, from any of its obligations with respect thereto.

5.05. In order to assist in the effectuation of the purposes of this Article V and the statutory objectives generally, the Developer agrees that during the period between execution of the Agreement and completion of the Improvements as certified by the Department:

(a) The Developer will promptly notify the Department of any and all changes whatsoever in the ownership of stock, legal or beneficial, or of any other act or transaction involving or resulting in any change in the ownership of such stock or in the relative distribution thereof, or with respect to the identity of the parties in control of the Developer or the shares thereof, of which it or any of its officers have been notified or otherwise have knowledge or information; and

(b) The Developer shall, at such time or times as the Department may request, furnish the Department with a complete statement, subscribed and sworn to by the President or other executive officer of the Developer, setting forth all of the stockholders of the Developer and the extent of their respective holdings, and in the event any other parties have a beneficial interest in such stock their names and the extent of such interest, all as determined or indicated by the records of the Developer, by specific inquiry made by any such officer, of all parties who on the basis of such records own 10 percent or more of the stock in the Developer, and by such other knowledge or information as such officer shall have.

Such lists, data, and information shall in any event be furnished the Department immediately prior to the delivery of the Deed to the Developer and as a condition precedent thereto, and annually thereafter on the anniversary of the date of the Deed until the issuance of a certificate of completion for all the Property.

- 25 -

JLB0091

2947 PAGE 778

5.05. Any other provisions of this Agreement to the contrary notwithstanding, the Developer may, without the prior written approval of the Department, transfer the Property and its interests under this Agreement to a limited partnership, subject, however, to the following conditions:

(a) The National Corporation for Housing Partnerships shall be the general partner of such partnership responsible for the conduct of the business and management of the affairs of the partnership until the issuance of the Certificate of Completion pursuant to Paragraph 3:09 hereof.

(b) The partnership agreement provides that prior to the issuance of the Certificate of Completion, pursuant to Paragraph 3:09 hereof, the partnership will not voluntarily be dissolved without the prior written approval of the Department; that, upon dissolution, no title or right to possession and control of the Property shall pass to any person who is not bound by this Agreement; and that the aforesaid provisions of such partnership agreement may not be amended without the prior written approval of the Department.

(c) The partnership agreement provides that additional persons may be admitted to the partnership (prior to the issuance of the Certificate of Completion, pursuant to Paragraph 3:09 hereof, and without any prior written approval of the Department) if such incoming partner shall, as a condition of receiving an interest in the partnership property, expressly agree to be bound by this Agreement: Provided, That, after

- 25a -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13265] RHB 2947, p. 0778. Printed 12/08/2007. Image available as of 11/16/2004.

JLB0092

2947 ᴘᴀɢᴇ 779

the admission of any additional person to the partnership, no distribution shall be made by the partnership to any partner until after the issuance of the Certificate of Completion pursuant to Paragraph 3:09 hereof.

(d) Such partnership shall by agreement recorded in the Superior Court of the City of Baltimore expressly assume and agree to be bound by and to perform and carry out all of the provisions of this Agreement.

(e) Developer agrees to provide the City with organizational documents of the limited partnership prior to formation for review of their conformity to the conditions contained herein. The City has the right to reject the limited partnership if the organizational documents do not so conform to the terms and conditions of this Agreement.

- 25b -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 16S-13265] RHB 2947 p 0779 Printed 12/06/2007. Image available as of 1/16/2004.

JLB0093

2947 ᴘᴀɢᴇ 780

ARTICLE VI

[PROPERTY RESTRICTIONS AND RIGHTS OF MORTGAGEE]

6:01.   Prior to the completion of the Improvements as certified by the Department, neither the Developer nor its successors and/or assigns, shall engage in any financing or any other transaction creating any mortgage or other encumbrance or lien upon the Property, whether by express agreement or operation of law, or suffer any encumbrance or lien to be made on or attach to the Property, except and only to the extent necessary, for the purpose of obtaining funds for the development of the Property and for the financing and refinancing of the purchase of the Property and the construction of the Improvements thereon.  The Developer, or its successors and/or assigns, shall notify the Department in advance of any mortgage financing or refinancing the Developer proposes to enter into with respect to the Property and shall promptly notify the Department of any encumbrance or lien that has been created on or attached to the Property, whether by voluntary act of the Developer or otherwise.

6:02.   Notwithstanding any of the provisions of this Agreement, including but not limited to those representing restrictive covenants running with the land, the holder of any mortgage authorized by or under this Agreement, including any such holder who obtains title to the Property as a result of foreclosure proceedings or action in lieu thereof, but not including (1) any other party who thereafter obtains title to the Property from or through such holder or (2) any other purchaser at foreclosure sale other than the holder of the mortgage itself, shall in no wise be obligated by the provisions of this Agreement to construct or complete the Improvements or to guarantee such construction or completion; nor shall any covenant or any other provision in the deed for the Property to be conveyed hereunder be construed to so obligate such holder:  Provided, that nothing in this paragraph or any other paragraph or provision of this Agreement shall be deemed or construed to permit or authorize any such holder to devote the Property to any uses, or to construct any improvements thereon, other than those uses or improvements provided or authorized in the Renewal Plan and this Agreement, and set forth as restrictive covenants in Schedule D hereof.

6:03.   Whenever the Department shall deliver or make any notice or demand to the

CLERK'S NOTATION
Document submitted for record
in a condition not permitting
satisfactory photographic repro-
duction.

-24-

JLB0094

2947 ᴘᴀɢᴇ 781

Developer with respect to any breach or default by the Developer in its obligations or covenants under this Agreement, the Department shall at the same time deliver to each holder of record of any mortgage authorized by or under this Agreement a copy of such notice or demand, and each such holder shall, insofar as the rights of the Department and the City are concerned, have the right, at the option of the holder of the mortgage, to cure or remedy such breach or default and to add the cost thereof to the mortgage debt and the lien of the mortgage: Provided, That if the breach or default is with respect to construction of the Improvements, nothing contained in this paragraph or any other paragraph or provision of this Agreement shall be deemed to permit or authorize such holder, either before or after foreclosure or action in lieu thereof, to undertake or continue the construction or completion of the Improvements (beyond the extent necessary to conserve or protect improvements or construction already made) without first having expressly assumed the obligation to the Department, by written agreement satisfactory to the Department to complete in the manner provided in this Agreement the Improvements on the Property and submitted evidence satisfactory to the Department that such holder has the qualifications and financial responsibility necessary to perform such obligation. Any such holder who shall properly complete the Improvements relating to the Property shall be entitled, upon written request made to the Department to a certification or certifications by the Department to such effect in the manner provided in Paragraph 3:09 of Article III of this Agreement.

6:04.  In any case where, subsequent to the default or breach by the Developer or its successors and/or assigns, under this Agreement, the holder of any mortgage on the Property:

(a) has, but does not exercise, or would otherwise have but cannot exercise, because of inability or failure to submit evidence satisfactory to the Department that such holder has the necessary qualifications and financial responsibility, or otherwise, the option to construct or complete the Improvements and such inability or failure continues for a period of sixty (60) days after the holder has been notified in writing of the default or breach; or

(b) undertakes construction or completion of the Improvements, but does not complete such construction within such period as agreed upon by

- 27 -

JLB0095

2947 PAGE 782

the Department and such holder, which period shall in any
event be at least as long as the period prescribed in this
Agreement for such construction or completion; and such
default shall not have been cured within sixty (60) days
after written demand by the Department so to do,

the City    shall, and every mortgage instrument made prior to completion of the
Improvements by the Developer or successor in interest shall so provide, have the
option of paying to the holder the amount of the mortgage debt and the interest and
other charges accrued thereunder at the time of such payment and securing an assign-
ment of such debt and of the mortgage, or in the event ownership of the Property has
vested in such holder by way of foreclosure or action in lieu thereof, the City
shall be entitled, at its option, to a conveyance to the City of the Property upon
payment to such holder of an amount equal to the sum of: (1) the mortgage debt at
the time of foreclosure or action in lieu thereof, less all appropriate credits
including those resulting from collection and application of rentals received during
foreclosure proceedings; (2) all expenses of foreclosure (3) the net expenses, if
any, exclusive of general overhead, incurred by such holder in and as a direct result
of the subsequent management of the Property; (4) the costs of any improvements made
by such holder; and (5) an amount equivalent to the interest that would have accrued
on the aggregate of such amounts had all such amounts become part of the mortgage
debt and such debt had continued in existence.

6:05.  In the event of a default or breach prior to the completion of the
Improvements by the Developer or its successors and/or assigns, in or of any of its
obligations under, and to the holder of, any mortgage or other instrument creating
an encumbrance or lien upon the Property, the City may at its option cure such
default or breach, and in such case the City shall be entitled, in addition to and
without limitation upon any other rights or remedies to which the City shall be
entitled by this Agreement, operation of law, or otherwise, to reimbursement from
the Developer or its successors and/or assigns, of all costs and expenses incurred
by the City in curing such default or breach and to a lien upon the Property for
such reimbursement:  Provided, That any such lien shall be subject always to the

- 28 -

JLB0096

2947 page 783

lion of, including any lien contemplated, because of advances yet to be made by, any then existing mortgages on the Property authorized by or under this Agreement and executed for the sole purpose of obtaining funds to construct the Improvements or the refinancing thereof.

6:06.  The term, "Holder", in reference to a mortgage or other encumbrance, as used in this Agreement, shall be deemed to include any insurer or guarantor of any obligation or condition secured by such mortgage or other encumbrance.

- 29 -

JLB0097

2947 PAGE 784

ARTICLE VII

TERMINATION

7:01.  This Agreement and the covenants to be performed hereunder may be terminated by the City, acting through the Department, prior to the conveyance of the Property herein contracted for, upon giving thirty (30) days written notice to the Developer, in the event the Capital Grant Contract for the Project Area, between the City and the United States of America, and any amendment thereof, is terminated by the United States of America, or said Contract, and any amendment thereof, is modified or changed by the United States of America, pursuant to the terms thereof, so that the amount of financial assistance to the City for said Project is reduced to such an extent as, in the sole judgement of the City, it is not feasible or practicable for the City to proceed with said Project.

7:02.  In the event any court of competent jurisdiction issues a final order or decree which prevents or restrains the City and the Developer, or either of them, from doing or performing any of the acts, matters or things to be done by them, or either of them, under the terms and provisions of this Agreement, and which materially prejudices the City and the Developer, or either of them, in their respective rights, duties and obligations under the terms and provisions of this Agreement, and any such final order or decree remains in force for a period of at least thirty (30) days and no appeal from any such order or decree is pending in any Appellate Court, then the City, acting through the Department, or the Developer, in addition to any other right of termination herein given to either of said parties, may terminate this Agreement in its entirety at any time by giving thirty (30) days written notice to that effect to the other party hereto.  Neither of the parties hereto shall be under any obligation to take an appeal to a higher court from any such order or decree if, in its judgement, such an appeal would be unavailing.

7:03.  In the event the City or the Developer terminates this Agreement under the terms and provisions of Paragraphs 7:01 or 7:02 of Article VII then neither of the parties hereto shall have any claim or right of action, in law or in equity, against the other for any costs, losses, expenses, damages or liabilities incurred or

-30-

BALTIMORE CITY SUPERIOR COURT (Land Records) MSA CE 158-13265 LRHB 2947, p. 0784. Printed 12/08/2007. (image available as of 11/18/2004

**2947 JULY 785**

...obtained by it in connection with, or resulting from entering into this Agreement or doing anything in connection with said Property, and, in the event of such termination, the City will refund to the Developer the deposit and any amount which the Developer has paid on account of the purchase price of said Property hereunder.

7:04. In the event that an amendment to the Renewal Plan is necessary to permit the undertakings contemplated by this Agreement and the Department is unable to obtain the necessary approvals of either the Mayor and City Council of Baltimore or the Federal Government to such amendment, then this Agreement shall be terminated by written notice thereof from the Department to the Developer, and any deposit or down payment made by the Developer shall be returned by the City and neither the City nor the Developer shall have any further rights against or liability to the other under this Agreement.

7:05. In the event that necessary permits or licenses for the development of the Property in accordance with the Construction Plans cannot be obtained from the Board of Municipal and Zoning Appeals or other City, State, Federal or other governmental agencies or departments, then this Agreement shall be terminated and any deposit or down payment made by the Developer shall be returned by the City and neither the City nor the Developer shall have any rights against or liability to the other under this Agreement.

7:06. In the event that the Developer shall furnish evidence satisfactory to the Department that it has been unable, after and despite diligent effort for the period of six months as provided in Section 3:15 of Article III, to obtain mortgage financing or a commitment therefor, for the construction of the Improvements on a basis and on terms that would generally be considered satisfactory to Developers for improvements of the nature and type required by this Agreement and contemplated by the Developer and the Developer shall, after submitting such evidence and if so requested by the Department, continue to make diligent efforts to obtain such financing for a period of one hundred twenty (120) days after such request, but without success, then this Agreement may be terminated by either party by written notice thereof and any deposit made by the Developer shall be returned to the Developer and neither the Department nor the Developer shall have any further rights against or liability to the other under this Agreement.

-31-

JLB0099

2947 PAGE 786

ARTICLE VIII

DEFAULTS

8:01.  In the event that prior to the conveyance of the Property to the
Developer and in violation of this Agreement:

    (a)  The Developer assigns or attempts to assign this Agreement or
        any rights therein or in the Property without the approval of the
        City, as herein provided; or

    (b)  The Developer does not submit Final Preliminary Plans and/or Construction
        Plans in satisfactory form and in the manner and by the dates provided
        in this Agreement therefor; or

    (c)  The Developer does not pay the purchase price for, and take title
        to, the Property at the time and upon the conditions specified in
        this Agreement;

and any such default or failure shall not be cured or remedied within thirty (X)
days after written demand by the City; then this Agreement, and any rights of the
Developer, or its successors and/or assigns, in this Agreement, or arising therefrom
with respect to the City, the Department, or the Property, shall at the option of the
City, be terminated by the City, in which event, the Deposit shall be retained by
the City as liquidated damages and as the property of the City without any deduction,
offset or recoupment whatsoever, but the City shall reimburse the Developer, or its
successors and/or assigns, any amount paid hereunder for or on account of the purchase
price of the Property.  Except as herein provided, neither the Developer nor its
successors and/or assigns, nor the City nor the Department shall have any further rights
against or liability to the other under this Agreement, following termination here-
under.

8:02.  In the event that subsequent to the conveyance of the Property to the
Developer and prior to completion of the Improvements as certified by the Department:

    (a)  The Developer, or its successors and/or assigns, shall default
        in or violate its obligations with respect to the construction
        of the Improvements, including the nature thereof and the dates

-32-

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13286] RRB 2947 p. 0788. Printed 12/09/2007. Image available as of 11/18/2004.

JLB0100

**2947 PAGE 787**

for beginning and completion thereof, or shall abandon or sub-
stantially suspend construction, and any such default, or violation,
or abandonment, or suspension shall not be cured or remedied within
ninety (90) days (or one hundred eighty (180) days, if the default
is with respect to the date for completion of the Improvement)
after written demand therefor by the City so to do or shall fail
to pay real estate taxes or assessments on the Property or any part
thereof when due, or

(b)  The Developer, or its successors and/or assigns, shall place on
the Property any encumbrance or lien unauthorized by this Agreement,
or shall suffer any levy or attachment to be made, or any
materialmen's or mechanics' lien or any other unauthorized encumbrance
or lien to attach, or any mortgage or mortgages and other liens
or encumbrances unauthorized by this Agreement for the purpose of
obtaining funds for the purchase of the Property and the making of the
Improvements, or either, or the refinancing of any such mortgage, lien
or encumbrance, or such other encumbrance or lien covered hereby shall
not have been removed, or discharged, or provision satisfactory to the
City, or compliance with the applicable law by bond, made for such
payment, removal, discharge or release, within ninety (90) days after
written demand therefor by the City so to do; or

(c)  There is, in violation of this Agreement, any transfer of the
Property, or any interest therein, except as aforesaid and such
violation shall not be cured or remedied within sixty (60) days
after written demand therefor by the City to the Developer;

then the City shall have the right, at the option of the City, to re-enter and take
possession of the Property and to terminate and revest in the City the estate
conveyed to the Developer as herein provided, it being the intent hereof that the
conveyance pursuant to this Agreement of the Property to the Developer shall be
made upon, and the deed herein provided shall contain, a condition subsequent to
the effect that, in the event of any default, failure, violation, or other action or
inaction by the Developer specified in subparagraphs (a), (b), and (c) of Paragraph
8(A) of Article VIII of this Agreement and failure on the part of the Developer to cure,

-33-

JLB0101

**2947 PAGE 788**

remedy, and, or abrogate such default, failure, violation, or other action or
inaction, within the period and in the manner stated in said subparagraphs, the
City, at its option may declare a termination in favor of the City of the title,
and of all rights and interest and in the Property conveyed hereunder to the
Developer, and that such title, and all rights and interest of the Developer,
and its successors and/or assigns, shall revert to the City, and the City may
retain the Deposit as the Property of the City without any deduction, offset or
recoupment whatsoever; Provided, That such condition subsequent, and any revesting
of title as a result thereof in the City: (1) shall always be subject to and
limited by, and shall not defeat, render invalid, or limit in any way (i) the lien
of any mortgage authorized by this Agreement executed for the sole purpose of
obtaining funds to purchase the Property and construct the Improvements, or either,
or to refinance any such mortgage, lien or encumbrance, (ii) any rights or interest
provided in this Agreement for the protection of the holders of such mortgages,
liens or encumbrances; and (2) shall not apply to individual parts or parcels
of the Property (or, in the case of parts or parcels leased, the leasehold interest
on which the Improvements to be constructed thereon have been completed and which
have, pursuant to authorization contained in this Agreement, been sold or leased
to other parties.  In addition to, and without in any way limiting the Department's
right to re-entry as provided for in the preceding sentence, the Department shall
have the right to retain the Deposit without any deduction, offset or recoupment
whatsoever, in the event of a default, violation or failure of the Redeveloper as
specified in the preceding sentence.

    8:03.  (a)  In the event of any default in or breach of this Agreement, or
any of its terms or conditions, at any time, by either party
thereto or any successor to either party, such party or its
successor shall upon written notice from the other, proceed
immediately to cure or remedy such default or breach, and,
in any event, within sixty (60) days after receipt of such
notice.  In case such action is not taken or diligently
pursued, or the default or breach shall not be cured or
remedied within a reasonable time, the aggrieved party may
institute such proceedings at law or in equity, which it may
deem proper including but not limited to, proceedings for

-34-

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13266] RHB 2947, p. 0788. Printed 12/06/2007. Image available as
of 11/18/2004.

JLB0102

2947 PAGE 789

injective relief or to compel specific performance by the
party in default or breach of its obligations.

(b) In the event that the City does not tender conveyance of the
Property, or possession thereof, in the manner and condition, and by
the date, provided in this Agreement and any such failure shall not
be cured within sixty (60) days after written demand by the Developer
then this Agreement shall, at the option of the Developer be cancelled,
and the Developer shall be entitled to a return of the Deposit, and
neither the City nor the Developer shall have any further rights
against or liability to the other under this Agreement.

(c) It is understood and agreed, however, that the City (including the
Department) is a municipal corporation and can exercise only those powers
granted it by law, and in the event the City is prevented, restricted,
or delayed in any of the duties and obligations imposed upon it or
assumed by it under the terms and provisions of this Agreement as a
result of any legal proceedings, it shall not be liable for any costs,
damages, injuries or liabilities caused to or suffered or incurred by
the Developer, its successors and/or assigns, in connection with, or as
a result of any such prevention, restriction or delay.

8.04.   The City shall have the right to institute such actions or proceedings as
it may deem desirable for effectuating the purposes of Paragraphs 8.01, 8.02, 8.03,
8.04 of Article VIII of this Agreement and the right to execute and record among the
Land Records of Baltimore City a written declaration of the termination of all rights
and title of the Developer, its successors and/or assigns, in the Property and the
reventing of title hereto in the City; provided, however, that any delay by the City
in instituting or prosecuting any such action or proceedings or otherwise asserting
its rights under Article VIII of this Agreement, shall not operate as a waiver of
the rights of the City, or to deprive it of any such rights in any way, it being the
intent hereof that the City should not be constrained, so as to avoid the risk of
being deprived of the exercise of any remedy provided in Article VIII of this
Agreement, because of concepts of waiver, laches or otherwise, to therefore such remedy

-39-

JLB0103

**2947** PAGE **790**

...at a time when the City may still hope otherwise to resolve the problems created by the default involved; nor shall any waiver in fact made by the City or the Department with respect to any specific default by the Developer under Article VIII of this Agreement be considered or treated as a waiver of the rights of the City and the Department with respect to any other defaults by the Developer under Article VIII or with respect to the particular default except to the extent specifically waived.

5.05. In the event that title to the Property or any part thereof shall revert to the City in accordance with Article VIII of this Agreement, the City shall, pursuant to the responsibilities under the laws of the State of Maryland and the ordinances of the City relating to urban redevelopment and renewal, use its best efforts to re-sell the Property as soon and in such manner as the City shall find feasible and consistent with the objectives of such laws and ordinances and of the Renewal Plan as hereafter amended from time to time, to a qualified and responsible party or parties as determined by the City, who will assume the obligation of making or completing the Improvements or such other Improvements in their stead as shall be satisfactory to the City and in accordance with the uses specified in the Renewal Plan, as hereafter amended from time to time.

5.06. Upon such re-sale of the Property by the City, the proceeds thereof shall be applied:

First, to reimburse the City, on its own behalf and on behalf of the Department, for all cost and expenses incurred by either, including but not limited to reasonable salaries of personnel in connection with receivership, management and re-sale of the Property, but less any income derived by the City from the Property or any part thereof, in connection with such management; all taxes, assessments and other charges with respect to the Property or any part thereof, or in amount equal to such taxes, assessments or charges as would have been payable if the Property were not exempt therefrom because held by the City; any payments made or necessary to be made to discharge any encumbrances or liens existing on the Property or any part thereof at the time of the reverting of title thereto in the City, or to

-34-

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13285] RHB 2947, p. 0790. Printed 12/08/2007. Image available as of 11/15/2004

JLB0104

discharge, or prevent from attaching or being made, any subsequent encumbrance or liens due to obligations, defaults or acts of the Developers, or its successors and/or assigns; any expenditures made or obligations incurred with respect to the making or completion of Improvements or any part thereof on said Property; and any amounts otherwise owing to the City or the Department by the Developer, or its successors and/or assigns;

<u>Second</u>, to reimburse the Developer, its successors and/or assigns, up to the amount equal to (i) the sum of the purchase price paid by the Developer for or on account of the Property, or any part thereof, and the cash actually invested by the Developer in making any part of the Improvements on the Property, but less (ii) any gains or income withdrawn or made by the Developer from this Agreement or from the Property.

Any balance remaining after such reimbursements shall be retained by the City as the property of the City.

8:07.  For the purposes of any of the provisions of this Agreement, neither the City, nor the Department, nor the Developer nor its successors and/or assigns, as the case may be, shall be considered in breach of or default in <u>any of their respective obligations under this Agreement</u>, in the event of enforced delay in the performance of such obligations due to unforeseeable causes beyond its control and without its fault or negligence, including but not restricted to, Acts of God, or the public enemy, acts of the Government, acts of the other party, fires, floods, epidemics, quarantine, restrictions, strikes, freight embargoes, and unusually severe weather or delays of contractors or subcontractors due to such cases (hereinafter individually and collectively referred to as "Enforced Delays"), it being the purposes and intent of this Paragraph that, in the event of the occurrence of any such Enforced Delay the time or times for the performance of the obligations of the City and the Department with respect to the preparation of the Property for development or of the Developer with respect to the Improvements, shall be extended for the period of the Enforced Delay; provided

- 37 -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13208] RHB 2947, p. 0791, Printed 12/08/2003. Image available as 01 12/18/2004.

2947 TALK 791

JLB0105

## 2947 md 792

however, that the party seeking the benefit of the provisions of this Paragraph shall, within twenty (20) days after the beginning of any such Enforced Delay, have first notified the other party thereof in writing and of the cause or causes thereof, and requested an extension for the period of the Enforced Delay. For the purposes of this Paragraph, any such notice from the Developer to the City or the Department shall be given to the Department.

Diff. The rights and remedies of the parties to this Agreement, whether provided by law or this Agreement, shall be cumulative, and the exercise by either party of any one or more of such remedies shall not preclude the exercise by such party, at the same or different times, of any other such remedies for the same default or breach, or of any of its remedies for any other default or breach by the other party. No waiver made by either party with respect to the performance, or the manner or time thereof, of any obligation of the other party or any condition to its own obligation under this Agreement, shall be considered a waiver of any rights of the party making the waiver with respect to the particular obligation of the other party or condition to its own obligation beyond those expressly waived and to the extent thereof, or a waiver in any respect in regard to any other rights of the party making the waiver or any other obligations of the other party.

Diff. The Developer, for itself or its successors and/or assigns, and all other persons or other legal entity who are or shall become, whether by express or implied assumption or otherwise, liable upon or subject to any obligation or burden under this Agreement, hereby waives, to the fullest extent permitted by law and equity, any and all claims or defenses otherwise available on the ground of its being or having become a person in the position of a surety, whether real, personal, or otherwise, or whether by agreement or operation of law, including, without limitation on the generality of the foregoing, any and all claims and defenses based upon extension of time, indulgence or modification of terms of contract.

-X-

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-13265] RHB 2947, p. 0792, Printed 12/08/2007, image available as of 11/18/2008.

JLB0106

2947 PAGE 793

ARTICLE IX

MISCELLANEOUS PROVISIONS

9:01. Nothing contained in this Agreement is intended, or shall be construed in any manner or under any circumstances whatsoever, as creating or establishing the relationship of co-partners, or creating or establishing the relationship of a joint venture, between the parties hereto, or as constituting the Developer as the agent or representative of the City for any purpose or in any manner whatsoever.

9:02. This Agreement, and any modification thereof and any additions thereto, shall be recorded among the Land Records of the City of Baltimore, State of Maryland, and the cost of any such recordation, any transfer tax and any and all Federal, State and City revenue stamps which legally must be attached to any or all of said papers shall be paid in full by the Developer.

9:03. This Agreement shall be taken and deemed to have been fully made and executed by the parties hereto in the State of Maryland for all purposes and intents.

9:04. No member, official or employee of the City shall have any personal interest, direct or indirect, in this Agreement, nor shall any such member, official or employee participate in any decision relating to this Agreement which affects his personal interests or the interests of any corporation, partnership, or association in which he is, directly or indirectly, interested, except such as is specifically permitted by law. No member, official or employee of the City or the Department shall be personally liable to the Developer or any successor in interest, in the event of any default or breach by the City or the Department, or for any amount which may become due to the Developer or any successor in interest, or on any obligations under the terms of this Agreement.

9:05. A notice or communication under this Agreement by either the City or the Department, on the one hand, to the Developer, or by the Developer, on the other, to the City or the Department, shall be sufficiently given or delivered, if dispatched by Certified Mail, postage prepaid, return receipt requested.

(a) In the case of a notice or communication to the Developer if addressed as follows:

Mr. George W. DeFrancaux, President
The National Housing Partnership
1133 Fifteenth Street, N.W.
Washington, D. C. 20005

JLB0107

**2947 PAGE 794**

(b)  In the case of a notice or communication to the City or the
Department, if addressed as follows:

> Commissioner of Department of Housing
> and Community Development
> Saratoga Street Municipal Building
> 222 East Saratoga Street
> Baltimore, Maryland 21203

(c)  In case such notice or communication is addressed in such other
way, in respect to any of the foregoing parties, as that party
may, from time to time, designate in writing, and dispatched as
provided in Paragraph 9:05 of Article II of this Agreement.

9:06.  None of the provisions of this Agreement are intended to or shall be
merged by reason of any deed transferring title to the Property or any part thereof
from the City to the Developer or its assigns and/or successors, and any such deed
shall not be deemed to affect or impair the provisions and covenants of this Agreement.

9:07.  In the event of any questions regarding the meaning of any of the
restrictive covenant agreements, or provisions contained in this Agreement, or in the
Renewal Plan, the interpretation placed thereon by the City shall be final and binding
on the parties hereto; Provided, That any such interpretation shall not be unreasonable
or arbitrary; and Provided, That this Paragraph 9:07 shall remain in full force and
effect until the date appearing in Paragraph 1:05 of Article I of this Agreement;
and further Provided, That, in the event these provisions are in conflict with those
of any Federal Housing Administration financing obtained by the Developer, then and in
that event the provisions of such Federal Housing Administration financing shall have
precedence over the provisions of this paragraph.

9:08.  While it is the present intention of the City to carry out the Renewal
Plan for the Project Area as soon as practicable, nothing contained in this Agreement
shall be construed as a warranty or commitment on the part of the City that any
improvements or other renewal work will be undertaken by the City or any other
Developer in this Project Area, except the items of work which this Agreement
obligates the City to undertake in connection with the Property and the renewal
thereof, as specified in Paragraphs 2:01 and 2:02 of Article II of this Agreement.

9:09.  Any titles of the several Articles of this Agreement are inserted for
the convenience of reference only and are to be disregarded in construing or
interpreting any of the provisions of this Agreement.

-40-

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA] CE 168-13206, RHB 2947, p. 0794. Printed 12/08/2007. Image available as of 11/18/2004.

JLB0108

2947 PAGE 795

9:10. Whenever used the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders. This Agreement shall be binding upon the parties hereto, their heirs, personal representatives, successors and/or assigns.

9:11. This Agreement is executed in six (6) counterparts, each of which shall be deemed to be an original, and such counterparts shall constitute one and the same instrument.

-A1-

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-1326] R/B 2947, p. 0795, Printed 12/08/2007. Image available as of 11/18/2004.

JLB0109

- 42 -

2947 PAGE 796

IN WITNESS WHEREOF, the CHAPEL HOUSING PARTNERSHIP has caused this Agreement to be signed in its name by its General Partner and they have affixed their hands and seals hereto duly witnessed, and the MAYOR AND CITY COUNCIL OF BALTIMORE has caused its name, by the Commissioner of Housing and Community Development to be signed, and its corporate seal to be affixed, duly attested by the deputy Treasurer of the City, to this Agreement, on the day and year first hereinabove written.

WITNESS:

CHAPEL HOUSING PARTNERSHIP
By:   National Corporation for Housing
Partnerships, its Sole General Partner

Attest: _____   By: _____ (Seal)

MAYOR AND CITY COUNCIL OF BALTIMORE

ATTEST:                         By: _____ (Seal)

_____         R. C. Embry, Jr., Commissioner
Deputy Treasurer                of Housing and Community Development

APPROVED AS TO FORM AND LEGAL SUFFICIENCY:

_____
City Solicitor

_____
Assistant City Solicitor

THIS IS TO CERTIFY, that the Commissioner of Housing and Community Development has approved all the terms and conditions contained in the fore-going Agreement between CHAPEL HOUSING PARTNERSHIP and the MAYOR AND CITY COUNCIL OF BALTIMORE and recommends that the foregoing Agreement be approved by the Board of Estimates.

DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

By: _____
R. C. Embry, Jr., Commissioner of
Housing and Community Development

- 42 -

JLB0110

2947 LIM 797    AUG 2 1972

The Board of Estimates, this _____ day of _____, 19 ____, acting

upon the approval and recommendation of the Commissioner of Housing and Community

Development, hereby approved the foregoing Agreement between CHAPEL HOUSING

PARTNERSHIP and the MAYOR AND CITY COUNCIL OF BALTIMORE

BOARD OF ESTIMATES

Richard A. Lidinsky, Clerk

DISTRICT OF COLUMBIA) s. s.:

On this 6th day of March, 1972, before me, Janet L. Young,

the undersigned officer, personally appeared, George W. DeFranceaux

and Frank W. Barnes, known personally to me to be the President and

Secretary, respectively, of the National Corporation for Housing Partnerships,

and that they, as such Officers, being authorized so to do, executed the

foregoing instrument for the purposes therein contained by signing the name

of the Corporation by themselves as such Officers, and that they know the

seal of said corporation; that seal affixed to such instrument is such corporate

seal; and that it was so affixed by order of the Board of Directors of the

corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

Janet L. Young
Notary Public

My Commission Expires: 3/14/76

— 43 —

JLB0111

2947 PAGE 798

STATE OF MARYLAND, CITY OF BALTIMORE, to wit:

I HEREBY CERTIFY that, on this 3d day of August , 19 72

before the subscriber, a Notary Public of the State of Maryland, in and for the

City of Baltimore aforesaid, personally appeared M. C. Embry Jr., Commissioner

of Housing and Community Development, and he acknowledged the foregoing Agreement

to be the corporate act and deed of the MAYOR AND CITY COUNCIL OF BALTIMORE.

AS WITNESS my hand and Notarial Seal.

_____
Notary Public

My Commission expires:
July, 1974

- 44 -

JLB0112

2947 PAGE 799

Schedule A

Contract Dated
By and Between the Mayor and City
Council of Baltimore (The City) and
Chapel Housing Partnership
(The Developer)

## GENERAL TERMS OF CONVEYANCE OF PROPERTY

### DESCRIPTION OF LAND

All of that land situate in the City of Baltimore, State of Maryland, known and designated as Lot No. 4, Chapel (HD A-1) and described as follows:

1. All courses and distances in this description are referred to the true meridian as adopted by the Baltimore Survey Control System.

2. Reserving to the City all of its right, title and interest in and to the beds of all streets abutting the property herein described, subject, however, to the use of said streets in common as public highways. All references to streets and alleys are for the purpose of description only and are not to effect a dedication.

Beginning for the same at the point formed by the intersection of the east side of Wolfe Street, as now laid out 70 feet wide, and the south side of Orleans Street, as now laid out 66 feet wide, and running thence binding on the south side of said Orleans Street, North 87°-04'-30" East 159.54 feet to intersect the east side of the former bed of Chapel Street, 20 feet wide, as condemned and closed; thence binding on the east side of the former bed of said Chapel Street, South 02°-45'-00" East 75.00 feet to intersect the north side of the former bed of a 10 foot alley, as condemned and closed; thence binding on the north side of the former bed of said 10 foot alley, North 87°-04'-30" East 140.00 feet to intersect the west side of Washington Street, as now laid out 70 feet wide; thence binding on the west side of said Washington Street, South 02°-45'-00" East 299.76 feet to intersect the north side of Fayette Street, as now laid out 70 foot wide; thence binding on the north side of said Fayette Street, South 87°-03'-40" West 299.00 feet to intersect the aforesaid east side of Wolfe Street and thence binding on the east side of said Wolfe Street, North 02°-50'-00" West 374.83 feet to the place of beginning.

Containing 101,665.73 square feet or 2.3339 acres of land.

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 168-12245] RHB 2947, p. 0799, Printed 12/02/2007. Image available at of 11/18/2004

JLB0113

2947 800

### DESCRIPTION OF AN EASEMENT LOCATED WITHIN LOT NO. 4

Beginning for the same at the point formed by the intersection of the south side of Orleans Street, as now laid out 66 feet wide, and the east side of the former bed of Chapel Street, 20 feet wide, as condemned and closed, and running thence binding on the east side of the former bed of said Chapel Street, South 02°-45'-00" East 75.00 feet to intersect the north side of the former bed of a 10 foot alley, as condemned and closed; thence binding on the north side of the former bed of said 10 foot alley, North 87°-04'-30" East 140.00 feet to intersect the west side of Washington Street, as now laid out 70 feet wide, thence binding on the west side of said Washington Street, South 02°-45'-00" East 10.00 feet to intersect a line drawn parallel with and distant 10.00 feet southerly, measured at right angles from the second line of this description; thence binding on said line so drawn, South 87°-04'-30" West 160.00 feet to intersect a line drawn parallel with and distant 20.00 feet westerly, measured at right angles from the first line of this description; thence binding on last said line so drawn North 02°-45'-00" West 85.00 feet to intersect the aforesaid south side of Orleans Street and thence binding on the south side of said Orleans Street, North 87°-04'-30" East 20.00 feet to the place of beginning.

JLB0114

2947 PAGE 801

Schedule A

Contract Dated
By and Between the Mayor and City
Council of Baltimore (The City) and
Chapel Housing Partnership
(The Developer)

## GENERAL TERMS OF CONVEYANCE OF PROPERTY

### DESCRIPTION OF LAND

All of that land situate in the City of Baltimore, State of Maryland,
known and designated as Lot No. 5, Chapel (HD A-1) and described as follows:

1. All courses and distances in this description are referred to the
   true meridian as adopted by the Baltimore Survey Control System.

2. Reserving to the City all of its right, title and interest in and
   to the beds of all streets abutting the property herein described,
   subject, however, to the use of said streets in common as public
   highways. All references to streets and alleys are for the purpose
   of description only and are not to effect a dedication.

   Beginning for the same at the point formed by the intersection of the south
side of Fayette Street, as now laid out 70 feet wide, and the east side of Wolfe
Street, as now laid out 70 feet wide, and running thence binding on the south side
of said Fayette Street, North 87°-03'-40" East 298.90 feet to intersect the west
side of Washington Street, as now laid out 70 feet wide; thence binding on the
west side of said Washington Street, South 02°-45'-00" East 807.27 feet to intersect
the north side of Baltimore Street, as now laid out 70 feet wide; thence binding on
the north side of said Baltimore Street, South 87°-06'-00" West 302.85 feet to inter-
sect the east side of Wolfe Street, as now laid out 60 feet wide; thence binding
on the east side of last said Wolfe Street, North 02°-54'-50" West 331.81 feet;
thence binding on the east side of Wolfe Street, varying in width, North 01°-43'-53"
East 70.23 feet; and thence binding on the east side of Wolfe Street, as now laid
out 70 feet wide, North 02°-50'-00" West 405.25 feet to the place of beginning.

   Containing 242,754.97 square feet or 5.5729 acres of land.

JLB0115

Chapel Neighborhood Development Program (N.D.P.)

Schedule B (ND A-1)

**2947** PAGE **802**

Lots Nos. 4 and 6

Contract dated _____
By and Between the Mayor and City Council of
Baltimore (The City) and _____
Chapel Housing Partnership
The Developer

### GENERAL TERMS OF CONVEYANCE OF PROPERTY

1. Restrictive Covenants

    (a) The Developer will not enter into, execute, or be a party to any
    covenant, agreement, lease, deed, assignment, conveyance, or any
    other written instrument, which restricts the sale, lease, use or
    occupancy of the Property, or any part thereof, or any Improvements
    placed thereon, upon the basis of national origin, race, religion,
    sex or color. The Developer will comply with all State and local
    laws, in effect from time to time, prohibiting discrimination or
    segregation, and will not discriminate, by reason of national
    origin, race, religion, sex or color in the sale, lease, use or
    occupancy of the Property.

    (b) The Developer shall devote the land to the following uses and to no
    other uses:

    1. Principal uses shall be Residential limited to single-family
    attached dwellings and multi-family detached and attached
    dwellings including elevator apartments.

| | Single Family Attached & Walk-Up Apartments | Elevator Apartments |
|---|---|---|
| Minimum Lot Area | 1,452 sq. ft./d.u. | 750 sq. ft./d.u. 500 sq. ft./e.u. |
| Maximum Lot Coverage | 50% | 30% |
| Maximum Height | 35 ft. | 225 ft. |
| Minimum Rear Yard | 25 ft. | 25 ft. |

    2. The following supporting uses will be permitted:

    Non-profit or publicly owned educational and cultural
    institutions such as schools, libraries, museums, aquar-
    iums, and planetariums.

JLB0116

2947 PAGE 803

Non-profit or publicly owned recreational facilities
such as parks and playgrounds,

Religious institutions such as churches and church
facilities,

Non-profit clubs and lodges; and hospitals

(c) Maximum density shall be 30 dwelling units per net residential
acre.

30 units per acre

(d) Off-street parking requirements are established in the Zoning
Ordinance of Baltimore City or in such lesser amount as may be
authorized by the Board of Municipal and Zoning Appeals as a
Special Exception.

(e) Except, where in the sole judgement of the Commissioner of Housing
and Community Development, a setback is justified, no setback
shall be required from any street except that a setback of 20
feet shall be required from Orleans Street.

(f) No building, structure, or parking area shall be constructed over
an easement without the prior written consent of the Department and
the Director of Public Works.

(g) The Department specifically reserves the right to review and approve
the Developer's final working drawings and specifications for re-
development with respect to their conformance with the provisions
of the R.D.P. Plan.

(h) All areas to be landscaped shall be appropriately landscaped with
trees, shrubbery, and plantings (e.g. grass, ground cover, flower
beds) in combination with related paving and surface treatment.
All land not covered by structures or by paved parking, loading or
related service areas, or specifically required to be landscaped
shall be landscaped as described herein.  All landscaping is to be
maintained in good condition by the Property owner.

(i) All exterior (surface) parking areas shall be paved with a hard,
dust-free surface; such areas shall be appropriately screened by
screen planting and/or masonry screening walls, from all adjacent
streets and shall be landscaped with trees, planted at the minimum

- 2 -

BALTIMORE CITY SUPERIOR COURT (Land Records) [MSA CE 148-13266] DMB 2947, p. 0803, Printed 11/03/2004.  Image available as
of 11/13/2004.

JLB0117

2947 ᵢᵦₓ 804

rate of one tree per 2,500 square feet of gross parking area. Such trees shall be planted at appropriate intervals within and throughout the paved surface of the parking area.

(j) Off-street parking spaces shall be calculated on the basis of 180 square feet per automobile exclusive of access aisles, driveways, ramps and related service areas, and shall be provided entirely within lot lines.

(k) Off-street loading spaces shall not be less than 12 feet wide and 40 foot deep. This space, plus adequate maneuvering space, shall be provided entirely within lot lines.

(l) No materials shall be stored or permitted to remain outside buildings.

(m) No waste material, refuse, or garbage shall be permitted to remain outside of buildings except as permitted by the Baltimore City regulations regarding containers for garbage. The areas for such containers shall be properly screened.

(n) No building shall be located so as to interfere with proper sight distances at street intersections.

(o) Signs

   (1) No signs other than those identifying the structure upon which they are installed or identifying the use conducted therein shall be permitted.

   (2) No sign shall extend above the roof line or parapet wall of the building to which it is attached. No sign shall project more than 12 inches from the building to which it is attached. No free standing signs shall be permitted.

   (3) No animated or pulsating signs shall be permitted.

   (4) The total area of exterior signs for each building shall not exceed in gross area one (1) foot times the street frontage, in feet, of the building.

(p) The Department specifically reserves the right to review and approve the Developer's detailed plans and specifications with respect to their conformance with the provisions of the N.D.P. Plan and in order

- 3 -

BALTIMORE CITY SUPERIOR COURT (Land Records)(MSA CE 163-13345) DHB 2947, p. 0804  Printed 12/08/2007  Image available as of 11/16/2004.

JLB0118

2947 ፣ᴸⁱᴮ:605

to achieve harmonious development of the project area.  Preliminary
sketch drawings of site plans, building elevations, and advertising
and identification signs in sufficient detail to show building and
sign locations, access parking and loading facilities and landscaping
shall be submitted to the Department for review and approval before
working drawings are made.

(q)  No building, fence, sign, landscaping treatment, paving, wall, private
roadway or other structure shall be commenced or erected on the
Property, nor shall any addition to or change or alteration therein
be made, until the Final Preliminary Drawings and Specifications
(hereinafter called the "Preliminary Plans") of site plans and
structure elevations in sufficient detail to show access, layout,
landscaping and building construction shall have been submitted
by the Developer and have been approved by the Department; and no
building, fence, sign, landscaping treatment, paving, wall, private
roadway or other structure shall be permitted or maintained on the
Property unless it conforms to the Final Working Drawings and Specifi-
cations (hereinafter called the "Construction Plans"), which have
been submitted by the Developer and have been approved by the
Department.  The approvals referred to herein shall be in accordance
with the provisions of Article III of this Agreement.

(r)  The Department shall have the right to refuse to approve any such
drawings, plans or specifications that are not suitable or desirable,
in its opinion, for aesthetic or functional reasons; and in so
passing upon such drawings, plans and specifications, it shall have
the right to take into consideration but shall not be limited to the
suitability of the site plan, architectural layout, materials of con-
struction, landscaping, access, advertising and identification signs,
exterior lighting, streets, and sidewalks, the harmony thereof with
the surroundings and the effect of the building or other structure, as
planned, on the outlook from other portions of the Project Area.

- 4 -

JLB0119

### 2947 PAGE 806

(s)  After the issuance of a Certificate of Completion by the Department, as
provided in Paragraph 3:09 of Article III of this Agreement, no change,
alteration or addition shall be made on the Property until the preliminary
sketch drawings of the site plans and structure elevations and the
Construction Plans reflecting those changes, alterations or additions
are submitted to and approved in writing by the Department as provided
in (q) and (r) above.

(t)  Maintenance

The Developer, at its sole cost and expense, at all times, shall keep
all buildings, structures, improvements, fixtures, equipment, machinery,
and walkways and other paved areas constructed, installed, erected,
or located on the Property, in good and safe order and condition and
in full and complete repair, both inside and outside, structurally
and otherwise, including the necessary and proper pointing.  All
buildings and structures, both inside and outside, parking spaces,
walkways, trees and shrubs, landscaped and other open and paved areas
constructed, erected or installed on the Property shall be kept by the
Developer in a neat, clean, orderly and sanitary condition including
the removal of refuse, rubbish, snow and ice.

REC'D FOR RECORD SEP 14 1972 1:35 P. M. & RECORDED IN THE LAND RECORDS OF
BALTIMORE CITY, LIBER R.H.B. 2947   PAGE 747   ROBERT H. BOUSE, CLERK

- 5 -

BALTIMORE CITY SUPERIOR COURT (Land Records) (MSA CE 168-13265) RHB 2947, p. 0806. Printed 12/08/2007. Image available as of 11/18/2004

JLB0120