# EXHIBIT 11

THIS FIRST AMENDMENT TO LAND DISPOSITION AGREEMENT, made and entered into this _____ day of _____, 2006, by and between CAPITAL DEVELOPMENT, LLC, a Maryland limited liability company, DELL HOUSE, LLC, a Maryland limited liability company (together, the "Developer") and the MAYOR AND CITY COUNCIL OF BALTIMORE, a municipal corporation of the State of Maryland (the "City"), acting by and through the DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT (a/k/a Baltimore Housing) (the "Department") and with the prior approval of the Board of Estimates of said municipality ("First Amendment")

RECITALS

1. The City and Chapel Housing Partnership (the "Predecessor Developer") entered into a Disposition Agreement dated August 2, 1972, (the "Original Agreement") in which the City conveyed certain property described as Lot No. 4, Chapel (MD A-1) containing 101,665.73 square feet or 2.3339 acres of land, more or less, know known as Ward 6, Section 11, Block 1702, Lot 1; and the property described as Lot No. 5, Chapel (MD A-1) containing 242,754.97 square feet or 5.5729 acres of land, more or less, now known as Ward 6, Section 11, Block 1684, Lot 1 (together, the "Original Property"). The Original Agreement was recorded among the Land Records of Baltimore City at RHB Liber 2947 folio 747.

2. The Predecessor Developer conveyed the Original Property to Developer by Deed dated December 31, 2002, and recorded among the Land Records of Baltimore City at FMC Liber 3232 Folio 244; the predecessor owner of that certain property known as Ward 6, Section 11, Block 1684, Lot 2, containing 10,497.96 square feet or 0.241 acres of land, more or less,

JLB0129

conveyed said property to Developer by Deed dated May 12, 2005, and recorded among the Land Records of Baltimore City at FMC 6709 Folio 859 (hereinafter known together as the "Property").

3. Developer seeks to redevelop the Property into a mixed-use residential, retail, and office complex including up to seven hundred eighty-six (786) dwelling units, consisting of approximately seventy-three (73) townhouse units (the "Townhouse Development") and up to seven hundred thirteen (713) multi-family dwelling units (the "Multi-Family Development") (collectively, the "Project");

4. The Baltimore City Council enacted two separate City Council Ordinances which relate to the Property. The first, Ordinance No. 01-0175, Amendment No. 10 to the Washington Hill-Chapel Urban Renewal Plan, amended the uses permitted on the Property. The second, Ordinance No. 04-859, approved the application of Developer to designate the Property as a Residential Planned Unit Development in accordance with Title 9, Subtitles 1 and 2 of the Baltimore City Zoning Code, and approved the Development Plan submitted by Developer.

5. The Original Agreement set forth the terms and conditions under which the Predecessor Developer would develop the Property. The Predecessor Developer completed construction of the Improvements as such term was defined in Article III, Paragraph 7, and in accordance with all other terms of the Original Agreement.

6. The terms of the Original Agreement pertaining to development of the Improvements are no longer applicable to the Property, and the only terms of the Original Agreement applicable to the future development of the Property are those covenants which continue to bind on and run with the land.

7. The Developer has agreed to allocate six percent (6%) of all dwelling units constructed on the Property as affordable/workforce housing units either for sale or for lease,

JLB0130

8.  It is the purpose of this First Amendment to (i) delete the Original Agreement in its entirety, (ii) replace the Original Agreement with those covenants from the Original Agreement which continue to pertain to the Property and the Project and provisions pertaining to the allocation, construction, sale, and rental of affordable/workforce housing units on the Property, and (iii) amend the definition of "Property" to include a third parcel known as Ward 6, Section 11, Block 1684, Lot 2, containing 10,497.96 square feet or 0.241 acres of land, more or less, which is now owned by Developer.

NOW THEREFORE, THIS AGREEMENT WITNESSETH, that in consideration of the mutual promises, conditions, and obligations provided for herein, the sufficiency of which is hereby acknowledged and agreed, the City and Developer for themselves, their successors and assigns, hereby covenant and agree as follows:

I.  The Recitals are hereby incorporated into and made a substantive part of this First Amendment.

II.  The Original Agreement is hereby deleted in its entirety and replaced with the following:

ARTICLE 1.  TERMS APPLICABLE TO DEVELOPMENT OF THE PROPERTY

1.01.  Premises.  The terms and conditions of this First Amendment shall apply to the property described as Ward 6, Section 11, Block 1684, Lot 1 containing 101,665.73 square feet or 2.3339 acres of land, more or less; Ward 6, Section 11, Block 1702, Lot 1 containing 242,754.97 square feet or 5.5729 acres of land, more or less; and Ward 6, Section 11, Block 1684, Lot 2, containing 10,497.96 square feet or 0.241 acres of land, more or less, as more particularly described in Schedule A (collectively, the "Property").

1.02. <u>Urban Renewal Plan</u>. The development of the Property shall be subject to the terms and conditions of Ordinance No. 40, approved April 26, 1972, as Washington Hill-Chapel Urban Renewal Plan, as such plan has been amended from time to time.

ARTICLE 2. RESTRICTIVE COVENANTS

2.01. <u>Non-Discrimination</u>. The following restrictive covenants are intended to operate as covenants binding upon the parties hereto, their successors and assigns, and bind on and run with the land forever. No covenant, agreement, lease, conveyance, or other instrument shall be effected or executed by the Developer, or any of its successors or assigns, whereby the Property or any portion thereof is restricted by the Developer, or any successor in-interest, upon the basis of race, color, creed, or national origin, in the sale, lease, use, or occupancy thereof. The Developer will not discriminate upon the basis of race, color, creed, or national origin in the sale, lease, or rental, or in the use or occupancy of the Property or any improvements erected or to be erected thereon, or any part thereof.

2.02. <u>Covenant's Binding Upon Successors In Interest</u>. It is intended and agreed that the covenants set out in Paragraph 2.01 shall be covenants running with the land, and that they shall in any event, and without regard to technical classification or designation, legal or otherwise, and except only as otherwise specifically provided in this Agreement, be binding to the fullest extent permitted by law and equity, for the benefit and in favor of, and enforceable by, the City, its successors and assigns, and any successors in interest to the Property or any part thereof, and the United States of America, against the Developer, its successors and assigns, and every successor in interest to the Property or any part thereof or interest therein, and any party in possession of the Property or occupancy of the Property, or any part thereof. It is further intended

and agreed that the covenants and agreements provided in Paragraph 2.01 shall remain in effect without limitation as to time; provided however, that such covenants shall be binding on the Developer itself, each successor in interest to the Property and every part thereof, and each party in possession or occupancy only for such period as each successor or party shall have title to, an interest in, or possession or occupancy of the Property or part thereof.

2.03. <u>Rights to Enforce Covenants and Agreements</u>. In amplification, and not in restriction of, the provisions of preceding Paragraph 2.02, it is intended and agreed that the City, acting through the Department, its successors and assigns, and the United States of America, shall be deemed the beneficiaries of the covenants and agreements provided in Paragraph 2.01, both for and in their own right and also for the purpose of protecting the interests of the community. Such covenants and agreements run in favor of the City and the United States of America for the entire period during which such covenants and agreements shall be in force and effect, without regard to whether the City or the United States of America at any time has been, remains, or is an owner of any land or interest therein to or in favor of which such covenants and agreements relate. The City, acting through the Department, and the United States of America shall have the right in the event of any breach of any such covenant or agreement provided in Paragraph 2.01, to exercise all the rights and remedies, and to maintain any actions or suits at law or in equity, or other proper proceedings to enforce the curing of such breach of covenant or agreement to which it or any other beneficiaries of such covenant or agreement may be entitled.

JLB0133

ARTICLE 3.   AFFORDABLE/WORKFORCE HOUSING UNITS

3.01. Developer shall allocate six percent (6%) of all residential dwelling units to be constructed on the Property as affordable/workforce housing units either for sale or lease. Currently, seven hundred eighty-six (786) dwelling units are projected for the Property and a total of six percent (6%), or forty-seven (47) dwelling units, would be allocated as affordable/workforce housing units, but in no event shall the total number of required affordable/workforce housing units be more than six percent (6%) of the units constructed. The remaining ninety-four percent (94%) of the dwelling units may be offered for sale or rent as market rate units.

3.02. Seventy-three (73) residential townhouse units are planned for the Townhouse Development located on the southern portion of the Project between Baltimore Street on the south (including the former bed of Fairmount Avenue) and the southern portion of the block located between Fairmount Avenue and Fayette Street on the north. Of these seventy-three (73) townhouse units, four (4) units, but in no event more than six percent (6%) of the total number of townhouse units constructed, will be allocated as workforce housing units to be priced and sold to households earning 120% of Area Median Income (AMI) applicable to the Baltimore Region, adjusted for household size, as published and annually updated by the United States Department of Housing and Urban Development (the "Workforce Townhouse Units").

3.03. Seven hundred thirteen (713) dwelling units (exclusive of the Townhouse Units referenced in Paragraph 3.02) are projected for the Multi-Family Development to be located on the remainder of the Property. Of these seven hundred thirteen (713) multi-family dwelling units, forty-three (43) of the units, but in no event more than six percent (6%) of the units constructed, will be allocated as Affordable Units. An

JLB0134

Affordable Unit is a unit to be sold, if located in a building with a majority of units offered for sale, or leased, if located in a building with a majority of units offered for rent, to households earning 80% of Area Median Income (AMI) applicable to the Baltimore Region, adjusted for household size, as published and annually updated by the United States Department of Housing and Urban Development (the "Affordable Units").

3.04. The Workforce Townhouse Units shall each have three (3) or more bedrooms and shall not be concentrated in any one location, but shall be reasonably distributed throughout the Townhouse Development as determined by the Developer, with the concurrence of the Baltimore City Housing Commissioner ("Housing Commissioner").

3.05. The Affordable Units shall each have one (1) or two (2) bedrooms and shall not be concentrated in any one location, but shall be reasonably distributed throughout the Multi-Family Development as determined by the Developer, with the concurrence of the Housing Commissioner.

3.06. Upon or prior to submission of a site plan that includes proposed residential dwelling units for the Townhouse Development or the Multi-Family Development to the City Site Plan Review Committee for review and approval, Developer shall notify the Housing Commissioner if the proposed site plan includes any units allocated by Developer as Workforce Townhouse Units or Affordable Units, and identify their proposed location on the site plan. The proposed construction of not more than one (1) Workforce Townhouse Unit in any row or "cluster" of townhouse units in the Townhouse Development shall be sufficient to satisfy the requirement that the Workforce Townhouse Units be reasonably distributed throughout the Townhouse Development and not concentrated in any one location.

JLB0135

3.07. The Workforce Townhouse Unit(s) shall be offered for sale to an eligible purchaser earning 120% of Area Median Income (AMI) applicable to the Baltimore Region, adjusted for household size, as published and annually updated by the United States Department of Housing and Urban Development ("Qualified Townhouse Purchaser"). The Developer shall certify to the Department that each initial purchaser of a Workforce Townhouse Unit qualifies as a Qualified Townhouse Purchaser as defined herein.

3.08. The Workforce Townhouse Unit(s) shall be offered at a Workforce Ownership Cost which is equal to a sales price requiring monthly payment, including mortgage principal and interest, taxes, insurance, and assessments, not to exceed a maximum of 1/12 of 30% of 120% of the AMI applicable to the Baltimore Region, adjusted for household size, as published and annually updated by the United States Department of Housing and Urban Development. At the request of Developer, the Department shall provide to Development the Workforce Ownership Cost then applicable to the sale of a Workforce Townhouse Unit.

3.09. The Affordable Unit(s) shall be offered for sale or rent to an eligible purchaser earning 80% of Area Median Income (AMI) applicable to the Baltimore Region, adjusted for household size, as published and annually updated by the United States Department of Housing and Urban Development ("Qualified Unit Purchaser" and "Qualified Lessee", respectively). The Developer shall certify to the Department that each initial purchaser of an Affordable Unit qualifies as a Qualified Unit Purchaser as defined herein, and each initial tenant of an Affordable Unit qualifies as a Qualified Unit Lessee as defined herein.

3.10. The Affordable Unit(s) shall be offered for sale to Qualified Unit Purchasers at an Affordable Ownership Cost, and for lease to Qualified Lessees at an Affordable Rent. Affordable Ownership Cost means a sales price requiring a monthly payment, including mortgage principal and interest, taxes, insurance, and assessments, not to exceed a maximum of 1/12 of 30% of 80% of the median income applicable to the Baltimore Region, adjusted for household size, as published and annually updated by the United States Department of Housing and Urban Development. Affordable Rent means a monthly payment for lease, sublet, let, or other rights to occupy a residential unit, not to exceed a maximum of 1/12 of 30% of 80% of the median income applicable to the Baltimore Region, adjusted for household size, as published and annually updated by the United States Department of Housing and Urban Development, less a reasonable allowance for utilities. At the request of Developer, the Department shall provide to Developer the Affordable Ownership Cost and/or Affordable Rent then applicable to the sale or lease of an Affordable Unit.

3.11. At Closing on the Workforce Townhouse Unit(s) and the Affordable Unit(s) offered for sale, and upon execution of a Lease for the Affordable Unit(s) offered for rent, the Qualified Townhouse Purchaser, Qualified Unit Purchaser and/or Qualified Unit Lessee shall execute a Declaration of Covenant in recordable form subjecting the Workforce Townhouse Unit purchased and/or Affordable Unit purchased or leased to the provisions of Article 3 of this Agreement (the "Declaration of Covenant"). The Declaration of Covenant shall be recorded in the Land Records of Baltimore City immediately after the Deed for said Workforce Townhouse Unit or Affordable Unit is so recorded, or immediately after issuance of a certificate of occupancy for a multi-family

residential building in which an Affordable Unit is offered for lease. The Declaration of Covenant shall provide for at least the following:

    (A)    Notwithstanding anything to the contrary in this Agreement, the Declaration of Covenant shall include a control period for each Workforce Townhouse Unit and each Affordable Unit offered for sale in the Project that is ten (10) years from the date of the initial sale of the unit by Developer to an initial Qualified Townhouse Purchaser and/or Qualified Unit Purchaser, and a control period for each Affordable Unit offered for rent in the Project that is ten (10) years from the date of issuance by Baltimore City of a Certificate of Occupancy for a multi-family residential building in which the Affordable Unit is located.

    (B)    The Developer, its agents, heirs, assigns or successors, irrevocably assign to the City, all of its right, title, interest, and obligation to enforce the provisions of the Declaration of Covenant during the term said Declaration of Covenant is in effect, and to institute any proceeding in law or equity for the collection of such sums as may be in excess of those allowed by law or to enjoin any violation or attempted violation of said Declaration of Covenant.

    (C)    Each subsequent sale of a Workforce Townhouse Unit or Affordable Unit during the control period, and each subsequent rental of an Affordable Unit during the control period but after the initial lease has expired or been terminated, shall follow the procedures set forth in the First Amendment to the LDA.

JLB0138

3.12. It shall be the obligation of Developer to comply with the provisions of this Article 3 as it relates to the allocation, construction, sale, and lease of the Workforce Townhouse Units and Affordable Units within the Project. It shall be the obligation of the City acting by and through the Department to enforce the provisions of the Declaration of Covenant.

3.13. It is the intent of the Developer and the City acting by and through the Department, that only the Workforce Townhouse Units and Affordable Units will be subject to the provisions of this Article 3 and the Declaration of Covenant, and that the market rate units will be neither restricted nor encumbered by either this Article 3 or the Declaration of Covenant. Until such time as a Deed transferring title of a Workforce Townhouse Unit or Affordable Unit from Developer to the initial Qualified Townhouse Purchaser or Qualified Unit Purchaser and the Declaration of Covenant are duly recorded in the Land Records of Baltimore City, the provisions of this Article 3 shall not run with, bind upon, nor restrict any individual lot within the Project.

3.14. Developer reserves the right to subdivide the northern parcel of the Project located between Fayette Street on the south and Orleans Street on the north and to sell and/or develop in whole or in part said northern parcel, provided that a number of dwelling units equal to six percent (6%) of the number of dwelling units constructed on the portion of the northern parcel being sold or developed, are allocated as Affordable Units on the remaining portion of the Project located north of the Townhouse Development and south of Fayette Street.

3.15. Any Ordinance enacted subsequent to execution of this First Amendment resulting from passage of City Council Bill 05-0070, City Council Bill 05-0235, City Council Bill 05-0248, or any other City Council Bill relating to or imposing requirements

JLB0139

with regard to low-income housing, mixed-income housing, workforce housing, affordable housing, and/or inclusionary zoning, shall not be applicable to nor burden the Project.

ARTICLE 4.   RIGHT OF FIRST OFFER

4.01.   Developer hereby grants and conveys to the Mayor and City Council, acting by and through the Department, the exclusive and irrevocable Right of First Offer to Purchase (the "Right of First Offer") the Workforce Townhouse Units and those Affordable Units being offered for sale, subject to the terms and conditions set forth below.

4.02.   Pursuant to the terms and provisions of this Right of First Offer, Developer will not sell the Workforce Townhouse Units and/or for-sale Affordable Units, or any portion thereof to a third-party purchaser without first delivering written notice to Buyer of its intention to sell or offer to sell the Workforce Townhouse Units and/or Affordable Units, which notice shall set forth the material business terms and conditions upon which Developer would be willing to sell the Workforce Townhouse Units and/or Affordable Units to the City (the "Sale Offer"). The Sale Offer shall be delivered by Developer to the City no later than thirty (30) days prior to the closing of the construction financing for any phase of the Townhouse Development or Multi-Family Development that includes the construction of Workforce Townhouse Units and/or for-sale Affordable Units. The Sale Offer shall include a site or building plan identifying the location of the proposed Workforce Townhouse Unit and/or for-sale Affordable Unit and typical floor plans for each Workforce Townhouse Unit and/or Affordable Unit being offered for sale.

JLB0140

4.03. The City shall have up to sixty (60) days after receipt of the Sale Offer within which to deliver written notice to Developer of the City's unqualified acceptance of such Sale Offer. The failure of the City to deliver written notice of its acceptance of the Sale Offer within the time and in the manner required shall constitute and be deemed a rejection of such Sale Offer, and the sale of the Workforce Townhouse Units and Affordable Units shall be governed by the provisions of Article 3 of this Agreement. Upon the City's acceptance of a Sale Offer within the time and in the manner required, the City and Developer shall negotiate a purchase agreement embodying the terms and conditions of the Sale Offer in good faith and on a reasonable basis.

ARTICLE 5.   MISCELLANEOUS PROVISIONS

5.01. <u>Notice</u>. Except as otherwise provided herein, all notices required to be given or authorized to be given pursuant to this Agreement shall be in writing and shall be delivered or sent by registered or certified mail, postage prepaid, or by commercial messenger to:

>  If to City:
>
>  Mayor and City Council of Baltimore
>  c/o Baltimore Housing
>  417 East Fayette Street
>  Baltimore, Maryland 21202
>  Attention: Commissioner
>
>  with a copy to:
>
>  City Solicitor
>  City Hall, Room 101
>  100 N. Holliday Street
>  Baltimore, Maryland 21202

JLB0141

and if to Developer:

Capital Development, LLC
3925 Beech Avenue
Baltimore, Maryland 21211
Attention: Tina King and David Holmes

with a copy to:

Stanley S. Fine, Esquire
Rosenberg | Martin | Funk | Greenberg, LLP
25 South Charles Street, Suite 2115
Baltimore, Maryland 21201

The City and Developer, by notice given hereunder, may designate any further or different persons or addresses to which subsequent notices shall be sent.

5.02   **Interpretation**. In the event of any question regarding the meaning of any of the restrictive covenant agreements or provisions contained in this Agreement, the interpretation placed thereon by the City shall be final and binding on the parties hereto; *provided*, that any such interpretation shall not be unreasonable or arbitrary.

5.03   **Counterparts**. This Agreement is executed in six (6) counterparts, each of which shall be deemed to be an original, and such counterparts shall constitute one and the same instrument.

IN WITNESS WHEREOF, CAPITAL DEVELOPMENT, LLC, a Maryland limited liability company, has caused this Agreement to be signed in its name by its Managing Member, and its Corporate Seal to be hereunto affixed duly attested, and the MAYOR AND CITY COUNCIL OF BALTIMORE has caused this Agreement to be signed in its name by Paul T. Graziano, Housing Commissioner.

| WITNESS: | CAPITAL DEVELOPMENT, LLC |
|---|---|
| */s/* | By: */s/* <br> Name: *David Helms* <br> Title: *Member* |

| WITNESS: | DELL HOUSE, LLC |
|---|---|
| */s/* | By: */s/* <br> Name: *David Helms* <br> Title: *Member* |

| ATTEST: | MAYOR AND CITY COUNCIL OF BALTIMORE |
|---|---|
| _____ | By: _____ <br> Paul T. Graziano, Commissioner |

STATE OF MARYLAND, ~~COUNTY~~ City OF Baltimore, TO WIT:

I HEREBY CERTIFY, that on this 17th day of January, 2006, before me, the undersigned Notary Public of the State of Maryland, personally appeared David Holmes, who acknowledged himself/herself to be the Member of CAPITAL DEVELOPMENT, LLC, and acknowledged the foregoing First Amendment to Land Disposition Agreement to be the act of CAPITAL DEVELOPMENT, LLC, and in my presence signed and sealed the same.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: 4/1/08

_____
Notary Public

STATE OF MARYLAND, ~~COUNTY~~ City OF Baltimore, TO WIT:

I HEREBY CERTIFY, that on this 17th day of January, 2006, before me, the undersigned Notary Public of the State of Maryland, personally appeared David Holmes, who acknowledged himself/herself to be the Member of DELL HOUSE, LLC, and acknowledged the foregoing First Amendment to Land Disposition Agreement to be the act of DELL HOUSE, LLC, and in my presence signed and sealed the same.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: 4/1/08

_____
Notary Public

STATE OF MARYLAND, COUNTY OF _____, TO WIT:

I HEREBY CERTIFY, that on this _____ day of _____, 2006, before me, the undersigned Notary Public of the State of Maryland, personally appeared PAUL T. GRAZIANO, Commissioner of Housing of the Mayor and City Council of Baltimore, and acknowledged the foregoing First Amendment to Land Disposition Agreement to be the act of said MAYOR AND CITY COUNCIL OF BALTIMORE, and in my presence signed the same.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: _____

JLB0145

APPROVED AS TO FORM AND
LEGAL SUFFICIENCY THIS

_____ DAY OF _____, 2006

By: _____
   Name: _____
   Title: _____

JLB0146

**APPROVED BY THE BOARD OF ESTIMATES:**

_____   _____
Clerk                                                        Date

#229403v9