**DEFENDANT'S EXHIBIT 7**

# ORIGINAL

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JLB REALTY, LLC, | : |
|     Plaintiff, | : |
|  vs. | : CASE NO. |
| CAPITAL DEVELOPMENT, LLC, | : 1:09-cv-00632-BEL |
|     Defendant. | : |

--------------------

Deposition of **PAUL JOHNSTON**, as **Corporate Designee pursuant to Rule 30(b)(6) for JLB Realty, LLC**, taken on Friday, August 14, 2009, at 9:40 a.m., at the law offices of Sellman & Hoff, 201 North Charles Street, Baltimore, Maryland, before Paul A. Gasparotti, Notary Public.

--------------------

Reported by:

Paul A. Gasparotti

CRC-Salomon
Baltimore, Maryland
Phone (410) 821-4888     Fax (410) 821-4889

## Page 21

was going to fight us over the earnest money if we chose to execute the contractual right that we had, and so we decided at that point that it was time to terminate the project.

Q. You told me there was a list of reasons, and you proceeded to say that you were advised that you had the contractual right to terminate, and I assume that was advice from counsel?

A. As well as my opinion.

Q. As well as your opinion, fine. My question to you is, what were the reasons why you exercised that contractual right?

MR. PRISBE: Objection. I think he just answered.

A. I just answered that.

Q. Well, you proceeded to give me sort of a laundry list of every reason under the sun. I'm asking what in your mind drove the decision that we are going to terminate this contract?

MR. PRISBE: Objection to form and foundation, and I believe it's been asked and

## Page 22

answered.

A. I mean, in my mind I described, and in my opinion the issues involved were basically, in any business you make a decision based off risk and reward, and you look at what do you feel like you could deliver, and this project was not a certain deliver, so to speak. We had a million dollars up at risk that the seller had already told us he was going to fight us over. I'm of the opinion then, as of now, and received counsel then and now that we still maintain the contractual right to terminate this project and receive the earnest money refund. So we made the business decision to terminate the project, recoup the million dollars with the intent of still negotiating with the seller if he was still willing to, to see if there was a project to be had, to be developed.

Q. When was the decision made to terminate the contract and recoup the earnest money?

A. There was no exact date in my mind that

## Page 23

I recall. There had been discussion about terminating probably since the beginning of the latter part of the fourth quarter of last year.

Q. So in the November-December time frame?

A. Right. And then I called Gary in December, I don't know the exact date, and instructed him to terminate the contract.

Q. Do you know when in December?

A. No.

Q. Now, was this a decision by you or a decision by the board?

A. It was a decision that was discussed within the executive group. I was of the opinion that we needed to do it. I received concurrence from others and so I called Gary.

Q. And you gave him instructions to terminate in December?

A. Correct.

Q. Do you know when he did in fact terminate?

A. He went and met with, can I call him

## Page 24

Dave?

Q. Sure, if you're willing to.

A. He met with Dave in late December and relayed that news that there was an intent to terminate. He did not terminate the contract as he had been told to. He started having some discussions I think with, or I know with Bay, about trying, instead of terminating, renegotiating the entire basic purchase structure, and so the termination didn't happen.

Q. Do you know why Gary did not follow your instructions?

A. No.

Q. Were you aware of it at that time, in late December, early January, were you aware that Gary had not followed your instructions to terminate the contract?

MR. PRISBE: Objection to form to the extent it's vague. You can answer.

A. Yes.

Q. Did you talk with him about that?

CRC-Salomon
Baltimore, Maryland
Phone (410) 821-4888   Fax (410) 821-4889