**DEFENDANT'S SURREPLY EXHIBIT A**

# ORIGINAL

1

|    |                                                      |
|----|------------------------------------------------------|
| 1  | IN THE UNITED STATES DISTRICT COURT                  |
| 2  | FOR THE DISTRICT OF MARYLAND                         |
| 3  |                                                      |
| 4  | JLB REALTY, LLC,                            :        |
| 5  |         Plaintiff,                          :        |
| 6  |    vs.                                      : CASE NO. |
| 7  | CAPITAL DEVELOPMENT, LLC,                   : 1:09-cv-00632-BEL |
| 8  |         Defendant.                          :        |
| 9  |         ---------------------                        |
| 10 |         Deposition of **PAUL JOHNSTON**, as          |
| 11 | **Corporate Designee pursuant to Rule 30(b)(6) for** |
| 12 | **JLB Realty, LLC**, taken on Friday, August 14,     |
| 13 | 2009, at 9:40 a.m., at the law offices of Sellman    |
| 14 | & Hoff, 201 North Charles Street, Baltimore,         |
| 15 | Maryland, before Paul A. Gasparotti, Notary          |
| 16 | Public.                                              |
| 17 |         ---------------------                        |
| 18 |                                                      |
| 19 |                                                      |
| 20 | Reported by:                                         |
| 21 | Paul A. Gasparotti                                   |

CRC-Salomon
Baltimore, Maryland
Phone (410) 821-4888     Fax (410) 821-4889

21

was going to fight us over the earnest money if we chose to execute the contractual right that we had, and so we decided at that point that it was time to terminate the project.

Q. You told me there was a list of reasons, and you proceeded to say that you were advised that you had the contractual right to terminate, and I assume that was advice from counsel?

A. As well as my opinion.

Q. As well as your opinion, fine. My question to you is, what were the reasons why you exercised that contractual right?

MR. PRISBE: Objection. I think he just answered.

A. I just answered that.

Q. Well, you proceeded to give me sort of a laundry list of every reason under the sun. I'm asking what in your mind drove the decision that we are going to terminate this contract?

MR. PRISBE: Objection to form and foundation, and I believe it's been asked and

22

answered.

A. I mean, in my mind I described, and in my opinion the issues involved were basically, in any business you make a decision based off risk and reward, and you look at what do you feel like you could deliver, and this project was not a certain deliver, so to speak. We had a million dollars up at risk that the seller had already told us he was going to fight us over. I'm of the opinion then, as of now, and received counsel then and now that we still maintain the contractual right to terminate this project and receive the earnest money refund. So we made the business decision to terminate the project, recoup the million dollars with the intent of still negotiating with the seller if he was still willing to, to see if there was a project to be had, to be developed.

Q. When was the decision made to terminate the contract and recoup the earnest money?

A. There was no exact date in my mind that

23

1 I recall. There had been discussion about
2 terminating probably since the beginning of the
3 latter part of the fourth quarter of last year.
4    Q. So in the November-December time frame?
5    A. Right. And then I called Gary in
6 December, I don't know the exact date, and
7 instructed him to terminate the contract.
8    Q. Do you know when in December?
9    A. No.
10   Q. Now, was this a decision by you or a
11 decision by the board?
12   A. It was a decision that was discussed
13 within the executive group. I was of the opinion
14 that we needed to do it. I received concurrence
15 from others and so I called Gary.
16   Q. And you gave him instructions to
17 terminate in December?
18   A. Correct.
19   Q. Do you know when he did in fact
20 terminate?
21   A. He went and met with, can I call him

24

1 Dave?
2    Q. Sure, if you're willing to.
3    A. He met with Dave in late December and
4 relayed that news that there was an intent to
5 terminate. He did not terminate the contract as
6 he had been told to. He started having some
7 discussions I think with, or I know with Bay,
8 about trying, instead of terminating,
9 renegotiating the entire basic purchase
10 structure, and so the termination didn't happen.
11   Q. Do you know why Gary did not follow your
12 instructions?
13   A. No.
14   Q. Were you aware of it at that time, in
15 late December, early January, were you aware that
16 Gary had not followed your instructions to
17 terminate the contract?
18   MR. PRISBE: Objection to form to the
19 extent it's vague. You can answer.
20   A. Yes.
21   Q. Did you talk with him about that?

25

1  A. Yes.
2  Q. And what was said in that discussion?
3  A. I don't recall the exact words
4  obviously, but I think the general nature of it
5  was that he was doing what any good development
6  guy would, he was fighting to save his project,
7  and so he was wanting to say let's not terminate,
8  let's go back and try to restructure something
9  that would be agreeable to both parties, and
10 that's what was proceeded with.
11 Q. Did he relay to you what his discussion
12 with Dave Holmes was in late December?
13 A. No.
14 Q. Do you have any personal knowledge
15 sitting here today as to exactly what he told
16 Dave Holmes in that discussion?
17 A. I was not present at the meeting
18 obviously.
19 Q. Did you ever get a report from anybody
20 as to what Dave Holmes was told in that December
21 time frame?

CRC-Salomon
Baltimore, Maryland
Phone (410) 821-4888   Fax (410) 821-4889

26

1  MR. PRISBE: Are you asking a
2  conversation, a weekly report, what is it you're
3  trying to get at? I'm unclear right now.
4  Q. You said you had instructed Gary to have
5  a discussion with Dave Holmes?
6  A. Correct.
7  Q. And my question to you is, do you know
8  what occurred in that discussion? Your answer
9  was no, I wasn't personally there. And so my
10 question is, did you hear from anybody, whether
11 it be Gary or anybody else, as to what they told
12 Dave in that discussion?
13 A. No.
14 Q. Did you personally have any discussions
15 with Dave Holmes as to what occurred in that
16 December discussion?
17 A. No.
18 Q. Were you aware at that point in time as
19 to what it was that Gary was telling Dave in the
20 December time frame?
21 A. No.

CRC-Salomon
Baltimore, Maryland
Phone (410) 821-4888   Fax (410) 821-4889

27

1  Q. Are you aware of what Gary was telling
2  Dave in the January time frame?
3  A. There were reports that I got from Gary
4  in writing. Also, he was talking to Bay, I was
5  talking to Bay, so as far as my understanding of
6  the nature of the discussions at that point, that
7  was what I heard in January.
8  MR. HOFF: And as I always end up doing
9  in a deposition, I go completely out of the order
10 that I anticipated going, because between you and
11 me, I like to just cut to the chase.
12 Before I mark this, let's mark the
13 deposition exhibit as Number 1, I mean deposition
14 notice, excuse me.
15 (JLB Exhibit 1, deposition notice,
16 marked for identification.)
17 MR. HOFF: Why don't we mark that as
18 Exhibit 2.
19 (JLB Exhibit 2, Plichta e-mail of
20 1/29/09 with handwritten notations, and JLB
21 Exhibit 3, handwritten notes of 2/13/09, marked

CRC-Salomon
Baltimore, Maryland
Phone (410) 821-4888   Fax (410) 821-4889

28

1  for identification.)
2  Q. Showing you what's marked as Exhibit 2.
3  Have you seen that previously?
4  A. I have.
5  Q. Were you --
6  A. Let me just make sure, I'm sorry.
7  (Perusing.) Yes, this is Gary's tome.
8  Q. When did you first see that?
9  A. I believe I saw it right after it went
10 out.
11 Q. Had Gary asked for your approval to
12 write that?
13 A. No.
14 Q. Did you approve that Gary had written
15 that?
16 A. Did I approve?
17 Q. Were you fine with the fact that he had
18 sent that out?
19 A. Yeah. I'm sorry, yes.
20 Q. Have you reviewed Exhibit 2 recently?
21 A. Yes.

CRC-Salomon
Baltimore, Maryland
Phone (410) 821-4888   Fax (410) 821-4889